GULLAND, Respondent, vs. NORTHERN COAL AND DOCK COM-
PANY, Appellant.

*September 14—December 5, 1911.*

*Master and servant: Dangerous machinery: Duty to guard: "Shaft-*
*ing:" Special verdict: Omitted matters not within issues tried:*
*Presumptions.*

1. A stationary shaft or axle upon which revolved a pulley wheel
   thirty inches in diameter, held in place by a collar on each side
   fastened to the shaft by set-screws projecting about five eighths
   of an inch, was not so located as to be dangerous to an em-
   ployee whose duty it was to apply oil by means of a swab to a
   steel cable running in a groove on the rim of the wheel, there
   being nothing in such duty requiring him to bring the swab or
   its handle or his hands within twelve inches of the set-screws,
   and no reason to suppose that in performing his duty he would
   come in contact with the shaft or set-screws; and hence, even
   if such a stationary shaft and set-screws are "shafting" within
   the meaning of sec. 1636*j*, Stats. (1898)—a point not decided,—
   the employer was not required by that statute to guard them.
2. Where the record shows that the only issues tried and deter-
   mined were whether defendant had performed the duty imposed
   by sec. 1636*j*, Stats. (1898), to guard certain machinery, and
   whether, if it had not, its default proximately caused plaint-
   iff's injury, there can be no inference or presumption under
   sec. 2858*m*, Stats. (Laws of 1907, ch. 346), that the trial court
   determined issues not embraced in the special verdict but es-
   sential to sustain a cause of action under common-law rules
   for neglect to furnish plaintiff a safe place to work.
3. Sec. 2858*m*, Stats. (Laws of 1907, ch. 346), is applicable to con-
   troverted matters omitted from the special verdict but within
   the issues raised in the cause of action tried and submitted,
   but does not apply to matters not embraced within the cause
   of action litigated upon the trial.

APPEAL from a judgment of the circuit court for Douglas
county: FRANK A. Ross, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries
received by the plaintiff on February 9, 1910, while em-
ployed by the defendant as an oiler on the defendant's coal
dock at Superior, Wisconsin.

The plaintiff was thirty-one years old at the time of the injury and had lived in the United States about eleven years. He commenced work for the defendant December 4, 1906, and worked for the defendant nearly continuously until the time of the accident. Before he became an oiler he had worked at other kinds of work for about two years. He worked as oiler on the bridge, which is a structure like a high bridge, made of angle irons and cross-beams riveted together. The bridge is about 300 feet long, extending across the dock in a northerly and southerly direction, and is about fifty feet above the floor of the dock. Upon a track, running the full length of the bridge, is a four-wheeled carriage used for the purpose of running the buckets and clams back and forth on the dock. The carriage is controlled by a three-quarter-inch steel cable attached to the bottom of the carriage. From the carriage the cable passes between the tracks to a drum in the hoisting room at the southerly end of the bridge, thence out of the hoisting room in a northerly direction over the top of the carriage to the north end of the bridge, where it passes over a sheave or grooved wheel, thence back in a southerly direction to the carriage to which it is fastened. By means of levers and appliances in the hoisting room the operator can raise or lower buckets from the dock to the carriage and can move the carriage in either direction along the tracks by means of the steel cable.

Plaintiff's injuries were received at the grooved wheel or sheave at the northerly end of the bridge. This wheel is about thirty inches in diameter. The cable is held in place by a groove on the rim of the wheel. The wheel is of cast iron, cast with a web instead of spokes, and is about three inches wide on the rim. The groove is about three inches deep. The shaft on which the wheel revolves is stationary and is fastened to the top of the track. The wheel is held in place on the shaft by a collar on each side of the wheel, which

are fastened to the shaft by set-screws running through the collar and into the shaft. The set-screws project above the collars, which they fasten to the shaft, about five eighths of an inch. The set-screws are about three inches from the hub of the wheel.

It was the plaintiff's duty as oiler to put oil upon the grooved wheel and the cable at the northern end of the bridge. In performing this duty he used a stick made from an old broom handle, about eighteen inches long, to one end of which was tied a bunch of waste about four inches through. The oiler stands south and west of the wheel with one foot upon an angle iron close to the shaft of the wheel, the other resting upon one of the rails of the track. He held himself with his left hand upon an angle iron and dipped the swab on the stick into a pail of thick oil standing upon the cross-beams over the wheel in front of him. It was necessary for him to bend forward and to press the swab upon the cable and wheel in order to oil the cable and the groove of the wheel. The cable from the top of the carriage came from a point above the wheel and hence came into contact with the wheel at a point north of the center of the wheel.

The plaintiff testified that he applied the oil swab as he had been instructed; that he applied pressure to press out the oil by drawing it over the edge of the wheel; that the swab slipped down from the edge of the wheel and came into contact with the set-screw and was caught between the set-screw and the revolving hub of the wheel; that his hand was flung up to the edge of the wheel and under the cable; and that he suffered the loss of all of the fingers on his right hand, the greater part of the palm of his hand, and part of the thumb. As a result of the injury the plaintiff suffered great pain from blood poisoning.

The jury found that the plaintiff was injured in unguarded machinery so located as to be dangerous to employees in the

discharge of their duties; that failure to guard the machinery was the proximate cause of the injury; and that the plaintiff was not guilty of contributory negligence.

The court awarded the plaintiff judgment for damages. This is an appeal from the judgment on the verdict.

For the appellant there was a brief by *A. E. Boyesen* and *Solon L. Perrin,* and oral argument by *Mr. Perrin.*

*W. P. Crawford,* for the respondent.

The following opinions were filed October 3, 1911:

SIEBECKER, J.    The jury found by special verdict that the machinery at which the plaintiff worked and which caused his injuries was so located as to be dangerous to employees in the discharge of their duties; that the defendant failed to securely guard it; and that such failure to securely guard it was the proximate cause of the plaintiff's injuries.    The defendant avers that the evidence does not sustain these findings of the jury.    The plaintiff's complaint and the evidence adduced to support it show that the plaintiff charged the defendant with a failure to comply with the requirements of sec. 1636*j,* Stats. (1898), in not securely guarding the machinery at which the plaintiff was employed as oiler, and that such failure to comply with the law was the proximate cause of plaintiff's injuries.    An examination of the record in the case discloses that the case was tried as one within this statute, and the verdict submitted embraces the issue for a cause of action for the default of defendant to securely guard machinery as required by the provisions of this section of the statutes.    The plaintiff contends that the cable and the revolving wheel upon the stationary shaft or axle and the collars attached to the shaft with set-screws holding the wheel in place is of the class of machinery embraced within sec. 1636*j,* Stats. (1898), and is "so located as to be dangerous to employees in the discharge of their duty," and hence should have been securely guarded or fenced.    Whether or

not the machinery in question is of the nature and kind speci-
fied in the provisions of this section is a question not free
from difficulties.   In the view we take of the case it is not
necessary to determine this question and therefore we do not
decide it.   If it be assumed, without deciding, that the ma-
chinery in question is of the kind specified in this statute, the
question arises: Is it "so located as to be dangerous to em-
ployees in the discharge of their duty?"   The gist of the
charge is that the plaintiff in the performance of his duty was
exposed to the dangers of a set-screw projecting above the
collars holding the revolving wheel in place upon the station-
ary shaft.   It appears that the plaintiff's duty required him
to use an oil swab to oil the cable running within the groove
of the rim of the wheel.   Performance of this duty in the
usual and proper course placed his hands at a distance of
from twelve to fifteen inches from the shaft and set-screw.
In performing the duty of oiling there was no occasion for
him to bring the oil swab and its handle and his hands nearer
than this to the set-screw or shaft.   It is evident from the
plaintiff's evidence that the only way that any part of the oil
swab could come into contact with the shaft or set-screw in
the performance of this duty was to operate it in some un-
usual manner and move it into the region of the set-screw
and shaft.   There is nothing in the evidence that in any
manner shows that the plaintiff was required to so manipulate
the swab and handle of the oiler as to bring it into this region,
nor would it in the natural course of operation reach to that
point.   From these conditions and circumstances it is ob-
vious that no one would have apprehended that the person
performing the duties of oiler would in the performance of
his duty come into contact with the shaft or set-screw.   In
fact it is difficult to conceive how either this stationary shaft
or set-screw could be a danger to any person oiling the ma-
chinery.   Just how the plaintiff came into contact with the
set-screw as he claims is not shown, nor in what manner his

hand was caught on the sheave under the cable. His evidence fails to disclose how the accident occurred. From the facts in evidence the conclusion must follow that if it be assumed that the shaft and set-screw in question were embraced in the provisions of sec. 1636$j$, Stats. (1898), (which we do not decide), still it is evident from the facts that they are not so located as to be dangerous to a person discharging the duties of oiler at the place in question, and hence the defendant was not required to securely guard them as is provided by this statute.

It is argued that, if the evidence establishes no cause of action within the contemplation of this statute, plaintiff is entitled to recover upon common-law grounds of negligence, in that the defendant neglected to provide an ordinarily safe place to perform the service required of the plaintiff. It is clear from the complaint and the issues inquired into at the trial that no such cause of action was considered, tried, or determined by the jury or court. The court held, as the record shows, that the cause of action presented raised the question whether the defendant had complied with the duties imposed by the provisions of sec. 1636$j$, Stats. (1898), and, if he omitted to comply therewith, whether or not such default proximately caused the injuries. This state of the proceeding authorizes no inference under the provisions of sec. 2858$m$, Stats. (Laws of 1907, ch. 346), that the court determined the issues not embraced in the verdict but essential to sustain a cause of action for negligence upon common-law rules to furnish plaintiff a safe place to work. The provisions of sec. 2858$m$ are applicable to controverted matters omitted from the special verdict covering the issues raised in the cause of action tried and submitted, and do not apply to matters not embraced within the cause of action litigated upon the trial. We are persuaded that the court erred in denying defendant's motion to direct a verdict in its favor.

*By the Court.*—Judgment reversed, and the cause remanded with directions to award judgment for the defendant.

TIMLIN, J. I do not think a stationary bar or axle upon which an idler-pulley runs comes within the statute, sec. 1636*j*, which says, "belting, shafting, gearing, hoists, fly- wheels, elevators and drums." The nearest word is "shaft- ing," and that does not include an axle which is not in motion and which neither transmits nor receives motion. I do not think it was intended that a bar of iron which never moves should be securely guarded or fenced. A set-screw is not required by the statute to be covered except as it is appurte- nant to and a part of "shafting." This set-screw projected three quarters of an inch and was at all times without motion. The guard or fence might project so much and be just as dan- gerous as the still set-screw.

BARNES, J., took no part.

A motion for a rehearing was denied December 5, 1911.