Kevin J. HANSEN,
Plaintiff-Respondent-Cross-Appellant,†

v.

TEXAS ROADHOUSE, INC.,
Defendant-Appellant-Cross-Respondent.

Court of Appeals

*No. 2010AP3137. Submitted on briefs December 14, 2011.
—Decided December 5, 2012.*

2013 WI App 2

(Also reported in 827 N.W.2d 99.)

† Petition for Review dismissed January 30, 2013.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Patrick S. Nolan* and *Marcus A. Wester* of *Quarles & Brady LLP*, Milwaukee.

On behalf of the plaintiff-respondent-cross-appellant,the cause was submitted on the briefs of *Ryan J. Hetzel* of *Hetzel & Nelson, LLC*, West Bend.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. NEUBAUER, P.J. Texas Roadhouse, Inc. appeals from a judgment in favor of Kevin J. Hansen. A jury awarded Hansen punitive damages for injury he suffered after he discovered human hair intentionally placed in his food by a Texas Roadhouse employee. Texas Roadhouse contends that the trial court erred in upholding the punitive damages award because the jury did not find Texas Roadhouse causally negligent. We agree. Hansen pled and the jury considered and rejected liability based on negligent supervision. Liability on an underlying tort claim is necessary for an award of punitive and emotional distress compensatory damages. We reverse and remand for entry of judgment consistent with this decision. We uphold the trial court's grant of summary judgment on Hansen's negligent hiring claim and its evidentiary rulings related to that claim.

## BACKGROUND

### *Underlying Facts*

¶ 2. This action arises out of an incident at a Texas Roadhouse restaurant on February 23, 2008. Ryan Kropp, a broil cook, intentionally placed human hair in Kevin Hansen's steak. Hansen, who was dining at the restaurant, felt his steak was overcooked, and the assistant service manager convinced Hansen to agree to a complimentary replacement. Kropp testified that after he cooked the replacement steak, he went to the

refrigerated meat room and placed hair from his face on the steak. Kropp returned the steak to the line to be served. Kropp said he told his coworker, Michael Perkins, "something;" Perkins testified that Kropp "poked a hole in the steak . . . and said 'these are my pubes.' " Perkins made no attempt to stop the steak from being served.

¶ 3. "A while" after he had seen Kropp point out the hair on the steak, Perkins reported the incident to the kitchen manager, who then immediately reported the matter to the service manager, Nicole Livermore. Livermore unsuccessfully attempted to contact the general manager. Livermore believed the incident had occurred hours before, did not think it possible to identify the recipient of the steak, and did not make any efforts to locate Hansen.

¶ 4. Hansen paid for the meal with a debit card and took the replacement steak home in a to-go container; he did not eat it until the next morning. After eating two or three bites, Hansen noticed a hair on his fork and a slit in the steak. Hansen did not consume any hair. He took the steak to the West Bend Police Department and filed an incident report. Kropp was subsequently convicted of placing foreign objects in an edible, contrary to WIS. STAT. § 941.325 (2009–10).[1] This civil action ensued.

## Hansen's Amended Complaint

¶ 5. Hansen sued Texas Roadhouse for injuries suffered as a result of consuming steak containing hair intentionally placed in it by Kropp. In his amended complaint, Hansen alleged four "causes of action":

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

(1) Texas Roadhouse was negligent in its training, hiring and supervision of Kropp and its managers, which caused injury to Hansen; (2) Texas Roadhouse was vicariously liable for Kropp's and its managers' actions under the doctrine of respondeat superior; (3) Texas Roadhouse breached the implied warranty that its food was fit for human consumption; and (4) Texas Roadhouse acted with intentional disregard for Hansen's rights in failing to respond to complaints about Kropp.[2]

¶ 6. Texas Roadhouse moved for summary judgment on certain of Hansen's claims. The trial court granted summary judgment as to the negligent hiring of Kropp.[3] The trial court also granted in part and deferred in part summary judgment on the punitive damages claim. The court determined:

> Punitive damages shall not be assessed against Texas Roadhouse for the actions of Ryan Kropp or for any conduct of Texas Roadhouse employees which occurred prior to Texas Roadhouse managers having notice of Kropp's intentional contamination of [Hansen's] steak. The court defers, until the time of trial, its decision as to whether Plaintiffs have met their burden of establishing, by clear and convincing evidence, that Texas Roadhouse management acted in intentional disregard of the rights of Plaintiffs after receiving notice that Kropp contaminated the aforementioned steak.

¶ 7. With the issues narrowed, the parties submitted written proposed jury instructions and a special verdict form. The parties agreed on Question No. 3: "Was the Defendant Texas Roadhouse, Inc. negli-

---

[2] Hansen additionally alleged loss of consortium on behalf of his wife; however, this claim was not submitted to the jury.

[3] Hansen voluntarily dismissed his negligent training claim.

gent in the supervision of Ryan R. Kropp?"[4] On Question No. 4, Hansen proposed: "Was such negligence of Defendant Texas Roadhouse, Inc. a cause of injury to the Plaintiff Kevin J. Hansen?" Texas Roadhouse requested: "Was Texas Roadhouse's negligence a cause of Ryan R. Kropp's conduct of contaminating the subject steak?" Hansen objected to the wording of the Texas Roadhouse version at a later in-court discussion on jury instructions and special verdict questions, arguing that it inappropriately required "an act of commission rather than omission." The trial court did not submit Hansen's version of Question No. 4 to the jury. Hansen did not request questions regarding the negligence, as opposed to negligent supervision, of Texas Roadhouse.

*Trial and Verdict*

¶ 8. The parties engaged in a five-day jury trial on the issues of negligent supervision, respondeat superior and breach of implied warranty. The verdict questions submitted to the jury (and the jury's responses) were as follows:

**QUESTION NO. 1:** **On February 23, 2008, did Ryan Kropp intentionally contaminate the food of Kevin J. Hansen?**

ANSWER: YES
Yes/No

**QUESTION NO. 2:** If, and only if you have answered Question No. 1

---

[4] Even though Hansen alleged negligent supervision of the managers in his amended complaint, his proposed question addressed Kropp only. Similarly, the respondeat superior Question No. 7, addressed Kropp only.

676

"**yes**", then answer this question (otherwise do not answer it):

**Was the conduct of Ryan Kropp a cause of the injury to the Plaintiff, Kevin J. Hansen?**

ANSWER: __YES__
Yes/No

**QUESTION NO. 3:** If, and only if you have answered Question No. 2 "**yes**", then answer this question (otherwise do not answer it):

**Was the Defendant, Texas Roadhouse, Inc. negligent in the supervision of Ryan Kropp?**

ANSWER: __YES__
Yes/No

**QUESTION NO. 4:** If, and only if you have answered Question No. 3 "**yes**", then answer this question (otherwise do not answer it):

**Was Texas Road house's negligence a cause of Ryan Kropp's act of contaminating the subject steak?**

ANSWER: __YES__
Yes/No

677

QUESTION NO. 5: Answer this question regardless of how you have answered any of the previous questions.

**Was the steak that was served to the Plaintiff Kevin J. Hansen, on February 23, 2008, in the "to go" box unfit for human consumption?**

ANSWER: YES 
 Yes/No

QUESTION NO. 6: If, and only if, you have answered Question No. 5 "yes", then answer this question (otherwise do not answer it):

**Was the condition of the steak a cause of injury to the Plaintiff, Kevin J. Hansen?**

ANSWER: YES 
 Yes/No

QUESTION NO. 7: Answer this question regardless of how you have answered any of the previous questions.

**Was Ryan Kropp acting within the scope of his employment as a servant of Texas Roadhouse, Inc. on February 23, 2008, when he prepared/contaminated**

678

the steak for the Plaintiff, Kevin J. Hansen?

ANSWER: __YES__

Yes/No

**QUESTION NO. 8:** Answer this question regardless of how you have answered the previous questions.

**What sum of money will fairly and reasonably compensate Plaintiff, Kevin J. Hansen with respect to the following:**

**a. Past Medical and Health Care Expenses** $ 3,000.00

**b. Past Pain, Suffering and Disability** $ 25,000.00

**c. Past Loss of Earning Capacity** $ 1,500.00

**QUESTION NO. 9:** Answer this question regardless of how you have answered any of the previous questions:

**After management became aware that Ryan Kropp had contaminated a steak, were the actions of the defendant, Texas Roadhouse Inc. through its agents and employees,**

679

done in intentional disregard for the rights of the Plaintiff, Kevin J. Hansen?

ANSWER: __YES__
Yes/No

**QUESTION NO. 10:** If, and only if you have answered Question No. 9 **"yes"**, then answer this question (otherwise do not answer it):

**What sum, if any, do you assess against Texas Roadhouse, Inc. as punitive damages?**

ANSWER: $ 100,000.00

As shown by its verdict answers, the jury rejected Hansen's negligent supervision and respondeat superior claims. The jury found that the wrongful act of Kropp was a cause of Hansen's injury. While the jury found Texas Roadhouse negligent in the supervision of Kropp, it did not find that this negligence caused Kropp's actions. The jury found Texas Roadhouse liable only under the third cause of action: breach of implied warranty.

### Postverdict Proceedings

¶ 9. In motions after verdict, Texas Roadhouse asked the trial court to enter judgment, but to limit Hansen's recovery to breach of contract damages. Texas Roadhouse argued that because Hansen failed to prove tort liability, any punitive damages or compensatory damages based on emotional distress are unrecover-

able. Texas Roadhouse additionally argued that the punitive damages award was unsupported because Hansen failed to establish aggravated conduct by Texas Roadhouse management that caused Hansen's injury, which is a prerequisite for recovery of punitive damages. Hansen requested that the court enter judgment on the verdict, change the jury's answer to Question No. 4, or, in the alternative, grant a new trial in the interest of justice "because the jury was not allowed to make a determination that the conduct of the defendant Texas Roadhouse, Inc. in failing to take any action to notify or protect [Hansen], after being placed on notice of the contaminated steak, was clearly negligent."

¶ 10. The trial court heard the motions and noted that "the jury found liability on the implied warranty theory only" and that it is well established that punitive damages cannot be awarded based on breach of implied warranty. The court determined:

> As worded, Question 9, in the opinion of this Court, does one of two things: It reflects [Hansen's] claim in cause of action No. 4 that this is an intentional tort committed by [Texas Roadhouse] against [Hansen]; or alternatively, implies negligence on the part of [Texas Roadhouse's] managers once management became aware of the contamination, which negligence, in and of itself, rose to the level of the intentional disregard of [Hansen's] rights as the jury was instructed to consider.
>
> Now, in retrospect, the verdict was not the most artfully crafted verdict . . . . It certainly would have been advantageous for [Hansen] to have alleged negligence on behalf of Texas Roadhouse management once they were notified that the contamination had occurred or at least for [Hansen] to have moved to

681

amend the pleadings to conform to the evidence in that regard. But as it is, we are stuck with the verdict we have.

. . . .

As unartfully as it may have been, the verdict represents . . . a determination by the jury that Texas Roadhouse management failed [Hansen] not only by serving him unfit food, but more importantly, by doing nothing about it once they found out about it.

. . . .

So despite the fact that the only specific cause of action affirmed by the jury was the breach of implied warranty claim, the Court is going to affirm the verdict on the basis of the nature of Question No. 9 itself which implies at least underlying negligence on the part of the management of Texas Roadhouse after management became aware of the violation that their employee, who the jury found was negligently supervised, had committed on the evening of February 23rd, 2008.

The court determined that "[Q]uestion No. 9 can be interpreted to fulfill the will of the jury" and, therefore, a new trial was not necessary. The trial court entered judgment on the verdict, affirmed that all damages as awarded by the jury were appropriate and supported by the evidence, and denied all other motions after verdict.

¶ 11. Texas Roadhouse appeals, challenging the award of punitive and emotional distress compensatory damages absent liability on an underlying tort claim. Hansen cross-appeals the trial court's dismissal of his cause of action alleging negligent hiring, the court's limitation of the punitive damages to the actions of Texas Roadhouse employees following the steak's contamination and its exclusion of evidence pertaining to

Kropp's background and Texas Roadhouse's failure to conduct reference or background checks.

## DISCUSSION

*Appeal*

■

¶ 12. On appellate review, we look to the propriety of the jury's verdict and whether the evidence supports it. *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 320, 475 N.W.2d 587 (Ct. App. 1991). Here, Texas Roadhouse contends that the jury's verdict (1) clearly assigned blame only to Kropp and (2) did not find that Texas Roadhouse caused Kropp's conduct or Hansen's injury. For the reasons set forth below, we agree.

### Implied Finding of Negligence

■

¶ 13. "A special verdict must cover material issues of ultimate fact. The form of a special verdict is discretionary with the trial court and [an appellate] court will not interfere as long as all material issues of fact are covered by appropriate questions." *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 49, 318 Wis. 2d 148, 769 N.W.2d 82 (alteration in original; citation omitted). The special verdict form is cabined by the issues raised by the pleadings and in dispute. *Lagerstrom v. Myrtle Werth Hosp.-Mayo Health Sys.*, 2005 WI 124, ¶ 97, 285 Wis. 2d 1, 700 N.W.2d 201.

¶ 14. Here, Hansen pled negligent supervision and vicarious liability. The jury rejected negligent supervision, answering "no" on the causation question;

683

the jury rejected vicarious liability under a respondeat superior theory, finding that Kropp was acting outside the scope of his employment. Despite acknowledging that general negligence was not tried and noting that "the only specific cause of action affirmed by the jury was the breach of implied warranty claim," the trial court nevertheless affirmed the verdict based on the jury's answer to verdict Question No. 9, which "implie[d] at least underlying negligence on the part of the management of Texas Roadhouse."[5]

¶ 15. The trial court's use of the jury's punitive damages award to imply an underlying finding of causal negligence suggests that the trial court was acting under WIS. STAT. § 805.12(2). This provision addresses omitted issues of ultimate fact on special verdict forms; it provides:

> **(2)** OMITTED ISSUE. When some material issue of ultimate fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, the issue shall be deemed determined by the court in conformity with its judgment and the

---

[5] After the trial court made its finding as to implied negligence in verdict Question No. 9, the following exchange took place:

[Texas Roadhouse counsel]: And just so I am understanding what the Court has ruled here, essentially you are saying that Question No. 9 stands for an implicit finding of both negligence and cause against Texas Roadhouse?

The Court: That's what I am saying.

[Texas Roadhouse counsel]: Even though those general theories were not tried?

The Court: They were not tried, but based on the findings that the jury made with regards to the other causes of action that [were] submitted to them, I think this Court can clearly conclude that their inaction was the cause of the damages to [Hansen].

failure to request a finding by the jury on the issue shall
be deemed a waiver of jury trial on that issue.

*Id.*

¶ 16. We conclude the trial court improperly ap-
plied Wis. Stat. § 805.12(2) for Hansen's benefit for
three reasons. First, in upholding the verdict, the trial
court did not heed the jury's "no" answer regarding
causation of Kropp's acts by Texas Roadhouse's negli-
gent supervision. Second, § 805.12(2) does not allow the
addition of a cause of action that was not submitted to
the jury. Third, Hansen waived submission of a general
negligence claim on the special verdict under Wis. Stat.
§ 805.13(3).

## Jury's Rejection of Causation

¶ 17. In upholding the verdict, the trial court
noted that the jury found that Texas Roadhouse negli-
gently supervised Kropp and then relied on an implied
finding of a causal connection to Hansen's injury. How-
ever, in response Question No. 4, the jury found that
Texas Roadhouse's negligent supervision was not a
cause of Kropp's wrongful act. Even if the jury consid-
ered Texas Roadhouse's conduct both before and after
discovery of Kropp's action, the jury did not find that
Texas Roadhouse's acts or omissions were a cause-in-
fact of Kropp's actions. *See Doe 67C v. Archdiocese of
Milwaukee,* 2005 WI 123, ¶ 44, 284 Wis. 2d 307, 700
N.W.2d 180 ("[F]or a plaintiff to succeed in a negligent
supervision claim, the jury must find a causal connec-
tion between the employer's negligence and the
employee's wrongful act."). Thus, any claim based on
negligent supervision fails as a matter of law.

685

¶ 18. Negligence is distinct from the specific tort of "negligent supervision." *See id.*, ¶ 43. To maintain a cause of action for negligence, a plaintiff must show: (1) duty, (2) breach, (3) a causal connection between the breach and the injury, and (4) damage resulting from the injury. *Id.* To maintain a cause of action for negligent supervision, a plaintiff must show: (1) the employer owed a duty of care to the plaintiff, (2) the employer breached its duty, (3) a wrongful act or omission of an employee was a cause-in-fact of the plaintiff's injury, and (4) an "act or omission of the employer was a cause-in-fact of the wrongful act of the employee." *Id.* Thus, regarding causation, negligent supervision requires a more specific finding.

> [In] negligent hiring, training or supervision ... the causal question is whether the failure of the employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury. In other words, there must be a nexus between the negligent hiring, training, or supervision and the act of the employee. This requires two questions with respect to causation. The first is whether the wrongful act of the employee was a cause-in-fact of the plaintiff's injury. The second question is whether the negligence of the employer was a cause-in-fact of the wrongful act of the employee.

*Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 262, 580 N.W.2d 233 (1998) (adopting tort of negligent hiring, training or supervision in Wisconsin).

¶ 19. Neither party contends on appeal that the trial court erred in submitting the special verdict to the jury. While Hansen did propose a different version of Question No. 4, it jumped over the required element

that Texas Roadhouse's negligent supervision was a cause of Kropp's conduct, instead asking: "Was such negligence of Defendant Texas Roadhouse, Inc. a cause of injury to the Plaintiff Kevin J. Hansen?" At trial, when discussing the special verdict, Hansen made the following objection:

> Although [*Miller v. Wal-Mart*] created a cause of action for negligent hiring, training, and supervision, my argument is that with the specific facts of that case, they were arguing a training standard where the training had caused the employees to subsequently harm a shopper, and it's my opinion that Question No. 4, which follows clearly the language in the jury instruction and follows the language of the Miller versus Wal-Mart case, is set up as an act of commission rather than omission, and negligent supervision, by its nature, is an act of omission, as is negligent hiring.

> So somebody's failure to supervise can never cause somebody specifically to do something. It allows it to happen. And that was my objection with respect to Question No. 4.

Hansen wanted to continue with his negligent supervision claim, but with one less element. He never proposed a revision to Question No. 3, which asked only about negligent supervision.

¶ 20. The causation question submitted to the jury followed the language in *Miller* for good reason: in *Miller* the supreme court established the required elements for a negligent supervision case. *Id.* at 267–68. In *Miller*, as in this case, the jury awarded punitive damages. *Id.* at 259. But, in *Miller*, the jury was not presented with a question regarding the causal connection between the employer's negligence and the employee's wrongful actions. *Id.* at 268. The supreme court held that the punitive damages award could not

687

stand unless, on remand, the jury found this required connection. *Id.* at 269–70. Here, the jury had the proper question and it answered "no." So, even if the trial court had submitted Hansen's Question No. 4, and even if the jury had said "yes," under *Miller*, Hansen would have failed to establish the required elements for recovery under negligent supervision. And ultimately, even though Hansen renewed his argument on the wording of Question No. 4 in his postverdict motion asking that the trial court change the jury's answer, his argument was exclusively about negligent supervision. The trial court denied Hansen's motion to change the verdict answer, and Hansen does not challenge that denial, or base his appeal on his prior objection.

WISCONSIN STAT. § 805.12 Does Not Allow
an Implied Theory of Liability

¶ 21. A negligence claim cannot be implied, under WIS. STAT. § 805.12(2), from the jury's response to the punitive damages question. It is undisputed that Question No. 9 pertained only to punitive damages. Punitive damages are a remedy, not a cause of action. *Brown v. Maxey*, 124 Wis. 2d 426, 431, 369 N.W.2d 677 (1985). Section 805.12(2) "is operative only when the question unsubmitted is essential to support the theory on which the pleadings were drawn and considered at the trial." *Tews v. Marg*, 246 Wis. 245, 249, 16 N.W.2d 795 (1944) (applying WIS. STAT. § 270.28, the predecessor to the current § 805.12). "It is a misuse of [§ 805.12(2)] 'to submit a case to the jury on one theory and then resort to this section and dispose of it on another theory.' " *Tews*, 246 Wis. at 249 (citation omitted). In *Tews*, the plaintiff brought an action for breach of warranty but then sought to uphold the jury's damages verdict on the

688

ground of fraud. *Id.* at 247–48. The appellate court reversed, noting that each action required distinct findings by the jury. *Id.* at 249–50. The court remanded for a new trial to allow the plaintiff to amend his pleadings. *Id.* at 250. *See also Gulland v. Northern Coal & Dock Co.*, 147 Wis. 391, 396, 132 N.W. 755 (1911) (trial court may not determine issues not embraced in the verdict, but essential to sustain an unpled cause of action).

¶ 22. Texas Roadhouse's negligence, independent of its supervision of Kropp's conduct, was not submitted to the jury.[6] The deficiency in the verdict is that it lacks an entire cause of action. Hansen acknowledges "there was no underlying special verdict question asking whether management of Texas Roadhouse was negligent after they became aware that the steak had been contaminated." The trial court cannot submit the case on one theory and resort to WIS. STAT. § 805.12(2) to dispose of it on another theory. *Tews*, 246 Wis. at 249.

Waiver of General Negligence Claim

¶ 23. Hansen waived submission of a general negligence claim to the jury under WIS. STAT. § 805.13(3). Section 805.13(3) obligates parties to aid in the preparation of special verdicts and to voice objections "with

_____

[6] On appeal, Hansen does not contend that he pled the general negligence of Texas Roadhouse via the negligent supervision claim in the amended complaint. His only contention in this regard is that the punitive damages claim put Texas Roadhouse on notice that the conduct of the managerial employees after they were made aware of the contaminated steak was at issue.

689

particularity on the record" to the form of the verdict questions at the jury instruction and verdict conference. Failure to object to a special verdict constitutes waiver. Sec. 805.13(3).

¶ 24. WISCONSIN STAT. § 805.12(2) works with WIS. STAT. § 805.13(3) to ensure that the special verdict that goes to the jury, and the jury's answers thereto, correspond to the causes of actions pled in the complaint and the proof put on at trial. *See Lagerstrom*, 285 Wis. 2d 1, ¶ 97. Under § 805.13(3), the parties confer, with the trial court's supervision, on the instructions and special verdict that will go to the jury. As stated above, if a party has an objection, he or she must voice it or it will be waived. Sec. 805.13(3). If, despite this conference, the special verdict leaves out an essential material issue of ultimate fact of a cause of action pled and presented to the jury, and the jury's answers define, by necessary implication, what the missing issue should be, then, under § 805.12(2) the trial court may "fill in" this missing issue. But what the trial court cannot do under § 805.12(2), and what the court did here and in *Tews*, is "fill in" a missing cause of action.

¶ 25. We reject Hansen's claim that Texas Roadhouse waived any objection to the special verdict. Texas Roadhouse is not challenging the form of the verdict— after all, the jury rejected tort liability. Rather, Texas Roadhouse challenges the trial court's upholding of a punitive damages award based on a finding of implied tort liability that was *not* on the verdict or found by the jury. As the plaintiff, it was Hansen's burden to plead and present to the jury the cause of action upon which he sought to hold Texas Roadhouse liable. Hansen provides no authority to support his contention that a defendant has an obligation to ensure that the plaintiff pursues an alternate theory of liability on a special

verdict, much less authority that precludes a defendant from challenging on appeal the trial court's addition of one.

¶ 26. We also reject Hansen's suggestion that Texas Roadhouse should have objected to the punitive damages question because there was no underlying tort to support punitive damages. The punitive damages question was not superfluous. If the jury had found liability on either negligent supervision or respondeat superior, it could have based punitive damages on Texas Roadhouse's conduct. But the jury rejected liability on both potential supporting tort claims.

¶ 27. The reality of this jury trial is that the jury rejected causal negligence. So even if the evidence supported a finding of negligence and an attendant award of punitive damages, the jury did not make that finding. It is undisputed that the punitive damages question did not pose a causation question. Indeed, it is precisely *because* the punitive damages analysis does not address causal liability that we require the jury to first make that finding. There simply is no authority permitting the trial court to do so.

¶ 28. The procedural rules relating to pleading, instruction conferences, jury instructions and verdict forms, as well as postverdict opportunities to amend the pleadings, make one thing clear: the plaintiff must plead, prove and present to the jury a cause of action upon which he or she seeks to hold the defendant liable. Short of that, and here, short of a jury finding of causal negligence, a defendant cannot be held liable.

¶ 29. We conclude that the trial court erred in upholding the punitive damages award. While the jury found Texas Roadhouse was liable for breach of an

implied warranty, punitive damages are not available as a remedy for breach of contract or implied warranty. *See Autumn Grove Joint Venture v. Rachlin*, 138 Wis. 2d 273, 279–80, 405 N.W.2d 759 (Ct. App. 1987). Similarly, damages for pain and suffering are not recoverable in actions on contract. *See McMahon v. Brown*, 125 Wis. 2d 351, 354, 371 N.W.2d 414 (Ct. App. 1985). Because the jury did not find tort liability, much less award compensatory damages based on a tort claim, punitive damages are not available. *See Musa v. Jefferson Cnty. Bank*, 2001 WI 2, ¶ 35, 240 Wis. 2d 327, 620 N.W.2d 797 ("Punitive damages cannot be awarded in the absence of other damages."). We reverse the trial court's postverdict order entering judgment in favor of Hansen for compensatory and punitive damages.

### Cross-Appeal

¶ 30. Hansen cross-appeals, contending that the trial court erred in (1) granting summary judgment on Hansen's negligent hiring claim and (2) precluding the jury from hearing evidence about Kropp's background and Texas Roadhouse's failure to investigate it.[7] We reject Hansen's arguments.

¶ 31. As to negligent hiring, Hansen alleged that Texas Roadhouse was negligent in failing to discover and consider Kropp's criminal record and in failing to

---

[7] Hansen additionally challenges the trial court's decision to limit the assessment of punitive damages to Texas Roadhouse's employees' actions following Kropp's contamination of the steak. Given our conclusion that punitive damages are not available to Hansen, we need not address this issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

contact his past employers. Hansen alleged that Texas Roadhouse "knew, or through the use of ordinary care, should have known, that [Kropp] had a history of anti-social and criminal behavior, making him unfit to serve in a food preparation role." At summary judgment, Hansen represented that Kropp had a criminal record including convictions for disorderly conduct, bail jumping and misdemeanor possession of marijuana. He also submitted evidence that Kropp had been terminated from his employment at Applebee's restaurant for drinking on the job.

¶ 32. In moving for partial summary judgment on Hansen's claim of negligent hiring and training, Texas Roadhouse argued that (1) Hansen's claim lacked evidentiary support that Texas Roadhouse failed to adhere to the ordinary standard of care in its hiring and training of Kropp and (2) there was no causal relationship between Kropp's hiring and training and Kropp's intentional criminal act of contaminating Hansen's steak. The trial court agreed that expert testimony was necessary as to the likelihood that a person with a prior record of unrelated crimes, who has been fired from another restaurant position for drinking on the job, is likely to engage in an activity such as the contamination of food. Because Hansen had failed to name an expert witness, the court granted summary judgment as to negligent hiring. We affirm the trial court's grant of summary judgment, although on different grounds.

¶ 33. We review de novo an order for summary judgment, using the same methodology as the trial court. *Yahnke v. Carson*, 2000 WI 74, ¶ 10, 236 Wis. 2d 257, 613 N.W.2d 102. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

693

material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶ 34. We agree with the trial court that it is a leap to find a causal connection between Kropp's prior employment record and his intentional criminal act of contaminating a steak. Absent additional evidentiary support, we agree that the jury would be invited to speculate that Kropp's prior drug and alcohol-related offenses could have reasonably alerted Texas Roadhouse that he would deliberately engage in criminal tampering of food. We need not decide whether expert testimony is necessary to reach such a determination because we conclude that Hansen failed as a matter of law to establish a causal nexus between the alleged negligence of Texas Roadhouse in hiring Kropp and Kropp's intentional contamination of Hansen's steak.

¶ 35. As discussed above, in a cause of action for negligent hiring, training or supervision, there must be a causal connection between the negligent hiring, training, or supervision and the wrongful act of the employee. *Miller*, 219 Wis. 2d at 262. The connection between the negligence of the employer and the act of the employee is as important as whether the act of the employee caused the injury. *Id.* Hansen's summary judgment submissions fail to establish a genuine issue of material fact as to whether Texas Roadhouse's failure to discover and consider Kropp's criminal history and failure to contact Kropp's previous employer to learn that he was drinking on the job were causally connected to Kropp contaminating Hansen's steak.

¶ 36. Hansen next challenges the trial court's exclusion of evidence pertaining to Texas Roadhouse's alleged failure to check Kropp's background and references before hiring. Without citation to the record,

694

Hansen contends that the trial court excluded the evidence because it came "dangerously close" to the issue of negligent hiring and that the trial court "did not engage in any reasoning as to its decision to exclude the evidence."

¶ 37. We need not consider arguments that are unsupported by references to the record. *Lechner v. Scharrer*, 145 Wis. 2d 667, 676, 429 N.W.2d 491 (Ct. App. 1988). Nevertheless, we see no erroneous exercise of discretion in excluding evidence that goes to a claim—negligent hiring—that was dismissed.

## CONCLUSION

¶ 38. The trial court erred in entering judgment for compensatory and punitive damages based on an implied finding of causal negligence on the part of Texas Roadhouse. The trial court did not err in granting partial summary judgment on Hansen's negligent hiring claim or in excluding evidence pertaining to Hansen's criminal record and previous employment. We reverse and remand for entry of judgment consistent with this decision.

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 39. REILLY, J. (*dissenting*). I respectfully dissent. The majority reverses the trial court's correction of an error in the verdict. The majority concludes that the jury rejected a cause of action for negligent supervision and that a "general negligence" action was never pled or presented to the jury. *See* Majority, ¶ 14. With due respect, the jury found Texas Roadhouse negligent, and Kevin Hansen both pled negligence on the part of Texas

Roadhouse management and presented negligence on the part of Texas Roadhouse management to the jury. The flaw in this trial was in the wording of Question No. 4 on the special verdict form, the "cause" question. Hansen objected at the instruction conference to Question No. 4 and had previously submitted the correct cause question to the court.

¶ 40. A summary of the trial is as follows: Hansen claimed injuries as a result of the negligence of Texas Roadhouse management for not acting after it learned that one of its cooks had contaminated Hansen's steak and placed the steak in a to-go box. Hansen further claimed that the failure of Texas Roadhouse's management to act in the face of a contaminated steak being served to one of its customers rose to the level of an "intentional disregard" of Hansen's rights, thereby subjecting Texas Roadhouse to punitive damages. The jury concluded punitive damages were warranted, and the trial court agreed with the jury in a postverdict decision.

¶ 41. When punitive damages are requested, a trial court is required to act as a "gatekeeper" before sending the question on punitive damages to the jury. *Strenke v. Hogner*, 2005 WI 25, ¶ 40, 279 Wis. 2d 52, 694 N.W.2d 296. The trial court exercised its role as gatekeeper and expressly noted that "mere negligence" actions do not support giving a punitive damage question. Texas Roadhouse attempted to avoid a punitive damage question on the verdict by arguing that its negligence did not rise to the heightened standard required for punitive damages. Texas Roadhouse's counsel argued to the court: "There certainly may have been misconduct, a mistake. Maybe [the manager] could have done something, but that's not punitive

damages . . . . This is a negligence issue." Texas Road-house clearly understood that *its* negligence was at issue in this case.

¶ 42. In submitting the punitive damage question to the jury, the trial court also concluded that the actions of Texas Roadhouse were more than "mere negligence." According to the trial court,

> The *issue becomes the defendant's response* when it received notice that that right had been violated, and in the opinion of this Court, that response appears to be, and I think a jury, under the facts that have been established thus far, could clearly find that the response to that was to do absolutely nothing.
>
> . . . .
>
> I have no doubt in my mind that this issue of punitive damages needs to go to this jury, and it will go to the jury, and we are going to give them the appropriate instruction. We are going to allow them to determine whether or not Texas Roadhouse, Inc., intentionally disregarded the rights of Mr. Hansen *once they became aware* of the fact that there was a steak contaminated on their premises in violation of law that went out of their store in the hands of a customer, and whether they took the appropriate action or not. (Emphasis added.)

### Background

¶ 43. A more thorough recitation of the facts is important to understand both the jury's and the trial court's decisions based upon the evidence before them.

- On February 23, 2008, Hansen, his family, and friends went to dinner at Texas Roadhouse in West Bend, Wisconsin.

- Hansen ordered his steak to be prepared medium-rare.

697

- Hansen received a steak that Texas Roadhouse admits was overcooked.

- Hansen did not complain nor did he ask for a new steak. Toward the end of their meal, the waitress stopped at Hansen's table to ask if the meal was to his party's satisfaction; Hansen's companion mentioned that Hansen's steak was overdone. Hansen responded that it was overdone but it was fine and he was satisfied with the steak.

- The waitress, in accordance with Texas Roadhouse's emphasis on customer satisfaction, told the assistant manager, Michael Liberatore, of the overdone steak and Liberatore came to the Hansen table and insisted on giving Hansen a new steak prepared at no cost for Hansen to take home.

- Liberatore took the overcooked steak back to Ryan Kropp to show Kropp that the steak was not prepared as ordered. Liberatore wanted Kropp to know that the steak was not prepared properly as a "teaching tool" for Kropp and to improve Kropp's performance.

- Kropp did not take the "teaching tool" well, as he thought the complaint came from a customer who wanted free food.

- Kropp cooked a new steak, sliced into the steak to make a pocket, and then removed a clump of his pubic hairs and placed them in the pocket. Kropp flipped the steak over to hide the pocket, showed the steak to his co-worker Michael Perkins, and said, "These are my pubes." He sent the steak out of the kitchen.

- Perkins, disturbed by what Kropp did, told his fellow employee Joseph Turecek what he had seen and what Kropp had said.

- Perkins went to his boss, Randy Gaines, and told Gaines that he saw Kropp stuffing hair in a

customer's steak and that Kropp identified the hairs as his "pubes." Gaines immediately went looking for the manager in charge, Nicole Livermore, and reported the incident to her.

- Livermore was aware of a prior allegation of Kropp intentionally contaminating food.

- Livermore tried to call the managing partner of Texas Roadhouse-West Bend, Jason Zbleski, who was not working that evening. Livermore could not reach Zbleski. Livermore made no effort to locate the steak, identify the customer, or confront Kropp.

- The steak was delivered to Hansen in a to-go box.

- Hansen ate the steak for breakfast the next morning. After his third bite he noticed a hair on his fork but just pushed it aside. He then observed a slice in the steak and when he prodded it open he found a wad of human hair. Hansen began to gag and was thereafter medically treated.

- Zbleski, the managing partner of Texas Roadhouse-West Bend, testified at trial that Livermore did nothing other than try to call him. Zbleski testified that Livermore should have done the following:

 1. Investigated the complaint she received from Gaines.

 2. Questioned Gaines about what he knew.

 3. Questioned Perkins and asked him what he saw.

 4. Confronted Kropp.

 5. Terminated Kropp that evening if she determined the allegation to be true.

 6. Tried to find the table served the contaminated food and waitress who served it.

 7. Talked to Liberatore about what he knew about the incident.

699

8. Attempted to locate the priority ticket that was involved.

9. Looked for the credit card receipt so as to identify the customer.

10. Gone to phone book upon getting the priority ticket to try to contact the customer.

11. Called the police.

- The jury heard the following testimony from Zbleski:

 [Hansen's counsel]: "She (Livermore) knew that a contaminated steak had gone to a customer?

 [Zbleski]: Yes.

 [Hansen's counsel]: She knew at some point that food was intending to be eaten?

 [Zbleski]: Yes.

 [Hansen's counsel]: She knew the health risk that that steak posed?

 [Zbleski]: Yes.

 [Hansen's counsel]: She disregarded Mr. Hansen's rights; is that correct?

 [Zbleski]: That's correct.

Hansen rested after Zbleski's testimony. Texas Roadhouse did not offer any testimony or evidence, choosing instead to attempt to argue to the jury that only Kropp was at fault.

### *The Trial Court, Not Hansen, Was Responsible for Asking the Wrong Cause Question*

¶ 44. Against this backdrop we examine the special verdict. The jury, having found Texas Roadhouse negligent in Question No. 3 of the verdict, was required

to determine whether Texas Roadhouse's negligence was a cause of Hansen's injuries. Hansen, in a pretrial submittal, expressly requested the following cause question: "Was such negligence of Defendant Texas Roadhouse, Inc. a cause of injury to the Plaintiff Kevin J. Hansen?" Hansen argued that such a question was required in this case as, unlike previous cases alleging negligent supervision, the alleged negligence involved acts of omission and that the traditional cause question for this new area of law would be nonsensical given the facts of the case. Unfortunately, the court did not ask the jury to determine whether the negligence of Texas Roadhouse was a cause of Hansen's injuries; rather, the court followed the cause question submitted by Texas Roadhouse and asked the jury whether Texas Roadhouse's negligence was a cause of Kropp's act of contaminating the steak.

¶ 45. At the instruction conference, Hansen objected to the court's Question No. 4 on the grounds that the question spoke to the "commission" of an act rather than the "omission[] and negligent supervision" of Texas Roadhouse. Texas Roadhouse did not counter Hansen's objection and the court noted the objection for the record but did not change Question No. 4 nor explain why it overruled Hansen's objection to Question No. 4.

¶ 46. The fact that the trial court followed the cause question submitted by Texas Roadhouse is inexplicable as the court had a colloquy with counsel for Texas Roadhouse on the issue of causation prior to sending the case to the jury. Texas Roadhouse was trying to pin all the blame on Kropp but the trial court did not buy it:

The Court: I understand that's your argument. In fact, in your brief, you argue that in this particular

701

case, the conduct that caused plaintiff Kevin Hansen's loss was Kropp's action of placing the hair in the steak, but I don't think that's the case.

. . . .

I think the causal relationship is obvious given the failure of Ms. Livermore or other managers to do anything whatsoever with regards to attempting to locate the customer that received this adulterated steak in violation of Wisconsin law.

## Texas Roadhouse, Not Hansen, Waived a Jury Trial on Whether Its Negligence Caused Hansen's Injuries

¶ 47. The majority's conclusion that Hansen "waived submission of a general negligence claim on the special verdict under Wis. Stat. § 805.13(3)," Majority, ¶ 16, is illogical. Section 805.13(3) provides the procedure for crafting the instructions and verdict to be given to the jury. "Failure to object at the [instruction and verdict] conference constitutes a waiver of any error in the proposed instructions or verdict." Id.

¶ 48. First, Hansen argued for and presented a negligence claim, including one that presumably meets the majority's standard for a "general negligence" cause of action. Both the complaint and the amended complaint alleged negligence on the part of Texas Roadhouse management, and the jury found Texas Roadhouse negligent. The majority seems to fault Hansen for giving too much detail about his negligence claims in his pleadings. Had Hansen made a vague/general allegation of negligence, without tying it to any more specific allegations, the majority apparently would be satisfied.

¶ 49. If what the majority is referring to as "general negligence" is negligence as defined by Wis JI—Civil 1005, the trial court in this case did give that

702

instruction to the jury. The trial court gave that instruction as part of Question No. 3, on which the jury found Texas Roadhouse negligent in its supervision. The court included in this "general negligence" instruction the provision that a person can be negligent for failing to do something. A person is negligent when he or she fails to do something "that a reasonable person would recognize as creating an unreasonable risk of injury . . . to a person." *See* WIS JI—CIVIL 1005 (Negligence: Defined). Negligence "cause[s]" an injury "if it [is] a substantial factor in producing the . . . injury." WIS JI—CIVIL 1500 (Cause). As the negligence of Texas Roadhouse management arose after the act of contamination, the cause could only follow from that negligence.

¶ 50. Second, Hansen objected to the form of the special verdict, preserving his postverdict ability to correct the trial court's error. The majority offers no rational explanation under these facts as to why waiver applies under WIS. STAT. § 805.13(3) to Hansen but not to Texas Roadhouse.

¶ 51. WISCONSIN STAT. § 805.12(2) provides that when a material issue of ultimate fact essential to sustain a judgment is omitted from the verdict, "the issue shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on the issue shall be deemed a waiver of jury trial on that issue." Texas Roadhouse did not request that the jury determine if its negligence was causal as to Hansen's injuries. Hansen implored the court to ask the correct cause question. Texas Roadhouse, in light of Hansen's objection to Question No. 4, knowingly waived its right for the jury to determine whether its negligence was a cause of Hansen's injuries. The court properly determined on postverdict motions,

in accord with § 805.12(2), that Texas Roadhouse's negligence was a cause of Hansen's injuries.

## Conclusion

¶ 52. Our duty as an appellate court when reviewing a hard-fought jury trial is to give deference to the fact that we were not there. Texas Roadhouse does not challenge the sufficiency of the evidence. WISCONSIN STAT. §§ 805.12(2) and 805.13(3) allow parties to try their cases the way they agree; but if either party believes the verdict or instructions are wrong, the party who believes an error has been made must raise the issue on the record so the trial court can address and correct the error or preserve the issue for postverdict review. Hansen is punished by the majority for the trial court's correction of an error in the special verdict that was *caused* by Texas Roadhouse—an error Hansen pointed out and tried to correct prior to the verdict going to the jury. I would affirm.