# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP71 |

| | |
|---|---|
| COMPLETE TITLE: | Mohns Inc., |
| |         Plaintiff-Respondent, |
| |   v. |
| | BMO Harris Bank National Association, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 475,934 N.W.2d 572
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | February 2, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 1, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | Kathryn W. Foster |

JUSTICES:

REBECCA GRASSL BRADLEY, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ZIEGLER and HAGEDORN, JJ., did not participate.

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Michael B. Apfeld, Andrew S. Oettinger,* and *Godfrey & Kahn S.C.*, Milwaukke; with whom on the brief was *Linda T. Coberly*, pro hac vice, and *Winston & Strawn LLP*, Chicago, Illinois. There was an oral argument by *Linda T. Coberly*.

For the plaintiff-respondent, there was a brief filed by *John E. Machulak* and *Machulak, Robertson & Sodos, S.C.*, Milwaukee. There was an oral argument by *John E. Machulak*.

2021 WI 8

No.  2018AP71
(L.C. No.  2016CV307)

STATE OF WISCONSIN        :        IN SUPREME COURT

Mohns Inc.,

    **Plaintiff-Respondent,**

    **v.**

BMO Harris Bank National Association,

    **Defendant-Appellant-Petitioner.**

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

**FILED**

**FEB 2, 2021**

Sheila T. Reiff
Clerk of Supreme Court

REBECCA GRASSL BRADLEY, J., delivered the majority opinion for a unanimous Court.

ZIEGLER and HAGEDORN, JJ., did not participate.

REVIEW of a decision of the Court of Appeals.  *Affirmed in part, reversed in part, and cause remanded.*

¶1  REBECCA GRASSL BRADLEY, J.   BMO Harris Bank National Association seeks review of the court of appeals decision, which affirmed the circuit court's order for judgment in favor of Mohns, Inc.[1]  The circuit court granted judgment on liability in

[1] Mohns Inc. v. BMO Harris Bank Nat'l Assoc., No. 2018AP71, unpublished slip op. (Wis. Ct. App. July 24, 2019) (per curiam).

The Honorable Kathryn W. Foster of Waukesha County Circuit Court presided.

favor of Mohns as a sanction for BMO's discovery violations pursuant to Wis. Stat. § 804.12(2)(a)(2017-18)[2] and scheduled a jury trial on damages. A jury awarded compensatory damages to Mohns for breach of contract and unjust enrichment as well as punitive damages. The circuit court entered judgment in the amount of $831,687.00, plus costs.

¶2    BMO argues the court of appeals should have: (1) reversed the circuit court's sanction imposing judgment on liability because the circuit court failed to consider whether Mohns was prejudiced by BMO's conduct; (2) set aside the damages award for unjust enrichment because the jury had already awarded damages for breach of contract, and the two are mutually exclusive; and (3) overturned the punitive damages award because it was tied to Mohns's contract claims, which cannot form the basis for a punitive damages award.

¶3    We hold: (1) the circuit court did not erroneously exercise its discretion when it imposed judgment on liability as a sanction for BMO's discovery violations; (2) because the law does not permit recovery of damages for both breach of contract and unjust enrichment arising from the same conduct, the award of damages for unjust enrichment must be set aside; and (3) the punitive damages award must be overturned because it was based upon an award of damages for the contract claims, and punitive damages are recoverable only in tort. We affirm the decision of

---

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

2

the court of appeals as to the discovery sanction; however, we reverse the decision of the court of appeals on damages and remand the matter to the circuit court to modify the order for judgment and judgment consistent with this opinion.

## I.  BACKGROUND

¶4  This case arises from a condominium construction venture between Paul Bouraxis, the developer; Mohns, the general contractor; and BMO (as successor-by-merger to M&I Marshall & Ilsley Bank), the bank financing the project, known as the Hickory Hills Condominiums.[3]  Bouraxis secured a commercial construction and mortgage loan (initially from M&I) to build 26 units, each housing four condominiums, on vacant land Bouraxis owned in New Berlin, Wisconsin.  As Mohns completed portions of the project, it submitted paperwork to the bank's title company in order to draw payment from BMO for materials, subcontractors' work, and Mohns's own work, upon the title company's confirmation that the work had been completed.

¶5  Work on the project progressed from its inception in 2005 until the economic downturn in 2008.  Mohns paused work on the project several times.  In 2010 and 2011, Mohns had concerns about whether it would be paid for its work because Mohns's draw requests for payment were not being paid promptly.

¶6  In 2011, before doing any more work on the project, Mohns sought reassurance from BMO banker Patrick Caine.  These

---

[3] BMO and M&I merged in 2011.  For clarity, the opinion uses BMO throughout the opinion because BMO assumed all of M&I's obligations related to this matter as a part of the merger.

conversations began in March 2011 and continued through August 2011. Although Caine indicated he could not give Mohns any specific dollar amounts, Caine assured Mohns that it would be paid. Caine told Bouraxis' manager that $223,000 was available to pay Mohns, and the manager shared this information with Mohns. Caine also sent a letter dated July 20, 2011 directly to Mohns's materials supplier, indicating that the supplier would be paid if it provided the materials to Mohns for the project. Based on these assurances, Mohns continued construction and submitted paperwork for two draws in July and one in August.

¶7  Unbeknownst to Mohns, during this time BMO had been working to sell the Bouraxis construction loan along with some other loans. In late July 2011, BMO sold the Bouraxis loan to MIL Acquisition Venture, LP. BMO took a loss on the sale as the purchase price was based on the value of the property, which was significantly less than the original loan amount. Mohns learned about the sale sometime in August. BMO banker Caine assured Mohns that he would forward the August draw to MIL, the new owner of the loan, for payment. Mohns continued work on the property until October 2011.

¶8  In July 2013, MIL filed a foreclosure action against Bouraxis, with Mohns named as a third-party defendant because of Mohns's liens on the property. See MIL Acquisitions Venture, LP v. Bouraxis Properties, No. 2014AP1982, unpublished slip op. (Wis. Ct. App. May 28, 2015) (per curiam). Mohns counterclaimed against MIL for unjust enrichment and equitable subrogation, seeking to recover payment for the work it did in 2011 for which

it had not been paid.  The circuit court granted summary judgment to MIL and the court of appeals affirmed, explaining: "While it appears there may be evidence that Mohns continued work in reliance on BMO's assurances of payment, Mohns fails to direct our attention to evidence supporting a finding that Mohns continued work in reliance on any MIL assurances."  Id., ¶23 (emphasis in original).

¶9  In February 2016, Mohns filed a complaint against BMO alleging three causes of action:  (1) BMO breached its contract to pay Mohns for its work on the condominium project; (2) BMO was unjustly enriched by the construction work Mohns provided on the condominium project, which increased the value of the loan sold by BMO; and (3) BMO misrepresented to Mohns that funds were available to pay it for the work it performed on the project, which BMO would pay Mohns if it continued constructing the condominiums.  The complaint alleged that if Mohns proved the misrepresentation "was intentional and/or in reckless disregard of Mohns's rights," Mohns should receive punitive damages.

¶10  BMO filed a motion to dismiss, which the circuit court denied.  In September 2016, Mohns served BMO with interrogatories, requests to admit, and a request for production of documents.  BMO served responses in October 2016, but in lieu of producing any documents, stated that all documents had been previously produced in the 2014 MIL lawsuit.  BMO's responses to the interrogatories and request for admissions contained more objections than answers.  BMO also objected to producing the

loan sale agreement, claiming it was subject to a confidentiality agreement between BMO and MIL.

¶11 In December 2016, Mohns served BMO with a notice for a deposition of a corporate representative who could explain BMO's discovery responses. On January 6, 2017, BMO filed a motion for summary judgment. On January 11, 2017, BMO produced Patrick Caine for the corporate representative deposition. Caine could not explain BMO's responses to discovery. He could not answer questions related to the merger, or topics listed in the deposition notice regarding the sale of the loan. Caine testified he did not know on July 20, 2011 that the loan was being sold to MIL despite multiple June 2011 emails discussing the sale of the loan, including a June 16, 2011 email indicating Caine knew the loan would be sold.

¶12 On January 26, 2017, Mohns filed a motion to compel discovery and a request for discovery sanctions against BMO. Mohns's brief in support of the motion said its attempt to narrow the issues for trial via written discovery requests had been thwarted by BMO's "evasive responses" and by its refusal to produce a corporate representative who had any knowledge about the topics relevant to Mohns's claims or who could explain BMO's evasive responses. Mohns argued: "BMO should not be entitled to interpose defenses to Mohns's action and then frustrate discovery calculated to examine those defenses." Mohns asserted that BMO should not be able to seek summary judgment when it refused to produce discovery that would defeat the motion for summary judgment.

¶13 In February 2017, the circuit court held a hearing on pending motions, including Mohns's motion to compel and BMO's motion for summary judgment. The circuit court found BMO in violation of discovery rules and granted Mohns's motion to compel because Mohns certainly had the right to ask for "who knew what when" and "not get the runaround." The circuit court ordered:

- Another corporate deposition of someone to be produced by BMO with firsthand knowledge of all the things Mohns requested or who could obtain that knowledge in preparation;

- BMO to provide specificity as to what was being denied in its responses to Mohns's request to admit that were "admitted in part and denied in part";

- The two attorneys to "work out" "what documents will be exchanged";

- BMO to provide to Mohns an unredacted copy of the loan sale agreement and all of its addenda in their entirety.

¶14 The circuit court found redaction would be unnecessary with a protective order, particularly since the confidentiality of the loan sale agreement runs exclusively in favor of BMO as the seller. The circuit court expressed frustration at BMO's handling of discovery, believing BMO was "stalling" or "playing a form of a legal shell game." For example, in the request to admit that "BMO is the successor-by-merger to M&I Marshall & Ilsley Bank," BMO responded: "Admitted in part, denied in part. BMO is the successor-by-merger to M&I Bank as expressly provided

7

in the applicable merger documents and agreements and applicable law, and BMO denies it otherwise assumed any obligations of M&I Bank." After much discussion, BMO ultimately stipulated during the hearing that: "BMO assumes responsibility for the alleged conduct of M&I" asserted in Mohns's Complaint.

¶15 The circuit court took Mohns's request for sanctions under advisement and postponed ruling on BMO's motion for summary judgment until discovery could be completed. The circuit court expected the additional discovery would "occur by April 7th, if not sooner" and gave the parties deadlines to file supplemental briefs, with the intent of recalling the matter by May 12th.

¶16 On March 2, 2017, the parties appeared in court on the summary judgment motion of Bouraxis, who had been impleaded by BMO as a third-party defendant. After the circuit court granted summary judgment to Bouraxis, the circuit court asked BMO and Mohns whether they wanted it to address BMO's motion for summary judgment then or wait until after discovery was completed. Both sides agreed to have the circuit court decide BMO's motion for summary judgment immediately. The circuit court denied the motion, specifically noting "that the shortcomings of the plaintiff's case related to intentional misrepresentation are a result of [BMO's] violation of the discovery rule." After denying BMO's motion for summary judgment, the circuit court warned BMO that if it did not "alleviate[]" the discovery violation "in the next couple months," it would grant summary

8

judgment for Mohns on liability as a sanction for BMO's discovery violation and send only damages to the jury.

¶17 The circuit court extended the discovery deadline until May 5th, indicating it wanted to give BMO "every opportunity to comply" and ordered BMO to produce a corporate representative for deposition "who can speak knowledgeably" about the matter. When BMO's lawyer protested that "the most knowledgeable people are former employees" whom "[w]e can't make . . . show up," the circuit court reminded BMO that "a subpoena works for non-employees the same as employees." The circuit court's written order denied BMO's motion for summary judgment and found BMO in violation of Wis. Stat. § 804.05(2)(e); the order directed BMO "to produce a corporate representative in compliance with § 804.05(2)(e)" or "be sanctioned by the [c]ourt as stated on the record."

¶18 After the hearings, BMO produced a complete copy of the loan sale agreement and a copy of the confidentiality agreement, but no other documents. On March 17, 2017, Mohns's lawyer sent a letter to BMO's lawyer acknowledging receipt of the loan sale and confidentiality agreements, pointing out that the confidentiality agreement does not apply, and requesting to schedule the corporate representative for deposition on March 29th, April 4th, or April 5th. Mohns's lawyer specifically requested BMO to "actively review" its "document production," identifying several examples of documents mentioned but not produced. BMO's lawyer responded on March 23, 2017, disputing several points from the March 17th letter, asserting he is

"working with BMO to review the efforts that have been undertaken to search for responsive documents" which will be produced "promptly" if located, and advising that he would "be in touch about scheduling the deposition as soon as possible."

¶19 On March 29, 2017, Mohns's lawyer wrote back to BMO's lawyer and refuted BMO's position set forth in its March 23rd letter, asserting:

- BMO had still "not identified, let alone produced, [an] appropriate corporate representative" as ordered by the court;

- BMO failed to produce any documents, instead relying on documents it produced in the 2014 case involving MIL, many of which were redacted;

- An appraisal and other documents were missing; and

- BMO misrepresented to the circuit court that it needed a waiver from MIL on the confidentiality agreement, even though the language of the confidentiality agreement proved otherwise.

Mohns's lawyer closed the letter by asking again for dates for the corporate representative deposition.

¶20 Eventually, the corporate deposition was scheduled for May 2, 2017. On Friday, April 26, 2017, BMO's lawyer notified Mohns's lawyer by email that BMO had just located "several thousand documents that are potentially responsive" to Mohns's discovery requests. The email provided a link and a password that would let Mohns's lawyer access these documents. When Mohns's lawyer tried to access the documents, however, the

10

password did not work. Mohns's lawyer contacted BMO's lawyer, who, the next morning, provided the correct password——allowing Mohns's lawyer to review the newly-disclosed 975 pages of documents. Mohns's lawyer notified BMO's lawyer on May 1, 2017 that he would be ready to proceed with the May 2nd corporate representative deposition as scheduled. When BMO's lawyer said he found "thousands" of additional discovery documents that his corporate designee would need additional time to review, Mohns's lawyers agreed to delay the deposition until May 9, 2017.

¶21 Shortly before 5:00 p.m. on Friday, May 5, 2017, BMO's lawyer sent Mohns's lawyer a link to access the additional documents, which contained 4,185 pages. BMO produced Natalie Johnson, a Relationship Manager on Special Assets, for the corporate representative deposition on May 9th. Johnson had not been involved in the loan sale, had not read any of the emails contained in the newly-produced documents, and could not answer many of the questions asked of her during the deposition.

¶22 In August 2017, the circuit court held an additional hearing on pending motions, during which it addressed Mohns's "motion to compel continuing" and BMO's "continuing motion for summary judgment." The circuit court, which had read Johnson's entire deposition, found that BMO failed to comply with the prior discovery order. It said:

- Johnson did not have the knowledge the circuit court had required, finding "so many questions in [Johnson's deposition] transcript . . . [to be] nonresponsive."

11

- "I have had root canals that were less painful than reading Ms. Johnson's transcript."

- Johnson reviewed only 20 documents in preparation and what she had not reviewed "seemed to be very, very germane."

- "Ms. Johnson was in as much of the dark as a lot of other people."

The circuit court found that based on the recently produced documents, Patrick Caine lied during his deposition, which the circuit court characterized as "a pretty significant misrepresentation to the [c]ourt and to plaintiff's counsel." The circuit court found BMO's discovery response "disingenuous[]" and "egregious[]" and that BMO had given Mohns, its lawyer, and the circuit court "the runaround." The circuit court found Mohns made straightforward discovery requests to which BMO had not provided proper responses——suggesting BMO withheld the documents because they revealed BMO's "guilt."

¶23 Most significantly, the circuit court found BMO "blatant[ly] disregard[ed]" its orders both as to producing the corporate representative and otherwise complying with its discovery order. It said BMO "egregiously ignor[ed]" its obligations, and BMO had previously withheld a document that was "as close to a smoking gun as I have seen in a long time in a misrepresentation claim." Based on "the egregious behavior of the defendants in violating this [c]ourt's order in not being responsive to the plaintiff's simple direct request for discovery," the circuit court denied BMO's motion for summary

12

judgment and, as a sanction, granted summary judgment to Mohns. The circuit court stated: "So when we have a trial in October, it is going to be on damages and punitive damages[.]" The circuit court noted that it had not "granted a summary judgment motion based on a discovery violation in the past, but [it couldn't] think of a more appropriate [case] than the one before [it]." The circuit court made its "decision with every confidence that [it] is the appropriate and legal sanction for what has been presented here," and noted that it had re-read all earlier transcripts, which confirmed the circuit court had "been more than generous to the defense to get [its] act together."

¶24 In its August 29, 2017 written order, the circuit court:

- Reaffirmed its earlier ruling denying BMO's summary judgment motion;

- Granted Mohns's requests for discovery sanctions;

- "[G]rant[ed] judgment to the plaintiff Mohns, Inc., as to the liability of the defendant BMO Harris Bank National Association, including the defendant's liability for intentional misrepresentation";

- "[B]ecause of BMO['s] conduct regarding discovery and disregard of the [c]ourt's orders . . . , grant[ed] judgment to the plaintiff Mohns[] for its attorneys' fees in an amount to be determined by the [c]ourt."

- Kept the case "scheduled for trial beginning on October 3, 2017," but stated that "the issues to be tried will be

13

the damages and punitive damages to be assessed against the defendant BMO[]."

¶25 BMO filed a motion asking the circuit court to reconsider its discovery sanction decision.  The circuit court denied the motion in a written order, explaining:

- BMO failed to produce pertinent documents until days before the second corporate representative deposition and then produced over 4,000 pages of documents, including a particularly relevant email from Patrick Caine;

- The circuit court warned BMO about the possibility of a sanction in the form of summary judgment but despite that warning, BMO failed to produce a representative who could provide meaningful testimony;

- Wisconsin Stat. § 804.12(2) authorizes the sanction imposed by the circuit court, which is "commensurate with BMO's misconduct" and supported by the record.

¶26 The case proceeded to trial in October 2017 as scheduled.  The special verdict form contained seven questions. Because of the circuit court's sanction, the special verdict form submitted to the jury already had the first three questions on liability answered "YES," leaving questions 4-7 to be answered by the jury.  The special verdict questions sent to the jury appeared as follows:

1. Did BMO Harris Bank National Association breach an agreement to pay Mohns Inc. for labor and materials which Mohns Inc. furnished for the Hickory Hills Condominiums project?

Answer: <u>YES</u>

Yes or No

2. Was BMO Harris National Association unjustly enriched by labor and materials which Mohns Inc. furnished the Hickory Hills Condominiums project?

Answer: <u>YES</u>

Yes or No

3. Did BMO Harris National Association make an untrue representation of fact, knowing it was untrue, or recklessly without caring whether it was untrue, and with the intent to deceive and induce Mohns Inc. to act upon it?

Answer: <u>YES</u>

Yes or No

4. What sum of money, if any, will fairly and reasonably compensate Mohns Inc. for its damages in the following regards:

(a)  Draw 1                          $_____

(b)  Draw 2                          $_____

(c)  Draw 3                          $_____

(d)  Interest on Draws               $_____

(e)  For Lost Profits and Work Completed

     After the Draw Applications     $_____


Regardless of how you answered question 4 and without duplicating amounts from question 4, answer this question:

15

5. What sum of money, if any, will fairly and reasonably compensate Mohns Inc. for the unjust enrichment experienced by BMO Harris National Association?

$_____

If you awarded damages to any component of question 4 or question 5, then answer this question:

6. Did BMO Harris Bank National Association act maliciously toward Mohns Inc. or in an intentional disregard of the rights of Mohns Inc.?

Answer:_____

Yes or No

If you answered "yes" to question 6, answer this question:

7. What sum, if any, do you award against BMO Harris Bank National Association as punitive damages?

¶27 The jury answered question 6 "Yes" and inserted total dollar amounts on questions 4, 5, and 7 as follows:

question 4: $106,581;

question 5: $132,668;

question 7: $1,000,000.

¶28 In November 2017, the circuit court heard BMO's post-verdict motions seeking judgment notwithstanding the verdict or a new trial based in part on law that precludes an unjust enrichment award when a plaintiff receives damages for breach of contract. BMO also challenged the jury's punitive damages award, both because it was not based on a tort and because the award violated the statutory cap in Wis. Stat. § 895.043. At the hearing, Mohns opposed BMO's motions and requested an award

16

of attorney's fees the circuit court previously indicated it would impose as a sanction for BMO's discovery violations.

¶29 The circuit court denied BMO's motions and awarded Mohns attorney's fees of $113,940 as part of the discovery sanctions. The circuit court reviewed eight of Mohns's requests to admit, finding that BMO lied in its responses. The circuit court noted:

> Consistent with the behavior in this case, BMO continues to thumb its nose at the rules of discovery in civil proceedings in this case. Lie, lie, lie, shift blame on somebody else, anybody else but themselves, and say, nope, didn't happen, when the evidence is in their computer system, in their files, it is in the minds of their employees who aren't produced for deposition, who aren't made available to speak the truth.

¶30 The circuit court did, however, reduce the jury's punitive damages award to two times the amounts listed in questions 4 and 5, awarding punitive damages in the amount of $458,484. Shortly after the hearing, the circuit court entered a final written order for judgment.

¶31 BMO appealed the circuit court's order to the court of appeals, which affirmed the circuit court. The court of appeals ruled the circuit court properly exercised its discretion in imposing judgment on liability against BMO as a discovery sanction based on BMO's egregious conduct, but the court of appeals did not address the merits of BMO's arguments on contract and unjust enrichment claims being mutually exclusive or the punitive damages awarded resting entirely on contract. In its view, BMO failed to adequately raise or brief these

17

issues. <u>Mohns Inc. v. BMO Harris Bank Nat'l Assoc.</u>, No. 2018AP71, unpublished slip op., ¶¶21, 28, 30 (Wis. Ct. App. July 24, 2019) (per curiam). BMO petitioned this court for review, which we granted.

## II. DISCUSSION

¶32 BMO believes the court of appeals erred in affirming the circuit court, and seeks reversal on three grounds: (1) the circuit court erroneously exercised its discretion in imposing discovery sanctions; (2) Wisconsin law does not permit a plaintiff to recover damages for both breach of contract and unjust enrichment; and (3) the punitive damages award must be overturned because it was based on contract rather than tort. We hold: (1) Wis. Stat. § 804.12 permits the discovery sanctions imposed in this case and the record demonstrates the circuit court acted within its discretion; (2) when a contract exists and the jury awards damages for its breach, the plaintiff cannot also collect damages for unjust enrichment based on the same underlying conduct or subject matter; and (3) because compensatory damages were awarded for the breach of contract claims but not the tort claim, the punitive damages award must be set aside. Accordingly, we affirm the decision of the court of appeals permitting the circuit court's imposition of discovery sanctions, but we reverse the decision of the court of appeals on damages and remand the matter to the circuit court to amend the order for judgment and judgment consistent with this opinion. Mohns may recover the amount the jury awarded for

18

breach of contract, but cannot recover for unjust enrichment or receive punitive damages.[4]

### A.   Standard of Review

¶33 A discovery sanction represents a discretionary determination of the circuit court and is examined under the erroneous exercise of discretion standard of review.  See Industrial Roofing Serv. v. Marquardt, 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898.  If the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach," we uphold the circuit court's decision.  Id.  We affirm a circuit court's factual findings unless they are clearly erroneous.  Wis. Stat. § 805.17(2).  Our review of whether a party may recover damages for both breach of contract and unjust enrichment and whether the punitive damages award is permitted in this case present questions of law we review de novo.   Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 259, 580 N.W.2d 233 (1998); Brown v. Maxey, 124 Wis. 2d 426, 431, 369 N.W.2d 677 (1985); Jacque v. Steenberg Homes, Inc., 209 Wis. 2d 605, 614, 563 N.W.2d 154 (1997).

### B.   Discovery Sanctions

¶34 BMO believes the circuit court erred in imposing the sanction of judgment as to liability both because of the

---

[4] BMO does not challenge the attorney's fees award, which the circuit court ordered as part of the sanction for BMO's discovery violations; therefore, the attorney's fees award stands and is not affected by the decision of this court.

severity of the sanction as well as the absence of a specific finding that Mohns was prejudiced by BMO's violations.  We disagree.

### 1.  Prejudice to Mohns is Not Required

¶35  BMO contends the circuit court's sanction was improper because it was imposed without making an explicit finding that Mohns was prejudiced by BMO's discovery violations.  Relying on Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc., 2002 WI 66, 253 Wis. 2d 238, 646 N.W.2d 19, BMO asserts a circuit court must explicitly assess prejudice before imposing the extreme sanction of default judgment.  Split Rock, however, does not apply.  That case addressed prejudice in the context of a defendant timely serving the plaintiff with its answer to the plaintiff's complaint, but not simultaneously filing the answer with the circuit court.  Id., ¶¶8-9.  When the clerk of courts notified Split Rock that the circuit court had not received an answer to Split Rock's Complaint, Split Rock filed a motion under Wis. Stat. § 806.02 to strike the defendant's answer and enter default judgment.  Id., ¶9.  The Split Rock circuit court granted the motion on the basis that there had been no "joinder of issue under 806.02."  Id., ¶10.  This court reversed, concluding that when considering "default judgment as a sanction for failure to file [an answer] promptly," prejudice should be considered.  Id., ¶33.

¶36  In contrast, this case involves BMO's failure to comply with the circuit court's discovery orders under Wis. Stat. § 804.12(2).  Wisconsin cases involving discovery

20

sanctions require a circuit court to make a finding of "egregious conduct" or "bad faith" without a "clear and justifiable excuse" before dismissing a plaintiff's case or granting default judgment, but do not require an explicit finding of prejudice. See Brandon Apparel Grp. Inc. v. Pearson Prop., Ltd., 2001 WI App 205, ¶11, 247 Wis. 2d 521, 634 N.W.2d 544; Garfoot v. Fireman's Fund Ins. Co., 228 Wis. 2d 707, 731, 599 N.W.2d 411 (Ct. App. 1999); Smith v. Gold, 224 Wis. 2d 518, 526, 592 N.W.2d 287 (Ct. App. 1999). These heightened findings are required because utilizing § 804.12(2)'s most serious sanctions of dismissal or default judgment are "drastic penalt[ies] that should be imposed only where such harsh measures are necessary." Hudson Diesel, Inc. v. Kenall, 194 Wis. 2d 531, 542, 535 N.W.2d 65 (Ct. App. 1995).

¶37 We have specifically declined to require prejudice to the offended party when default judgment is imposed as a discovery sanction. See Industrial Roofing Serv., 299 Wis. 2d 81, ¶43; Johnson v. Allis Chalmers Corp., 162 Wis. 2d 261, 282, 470 N.W.2d 859 (1991) (overruled in part on other grounds by Industrial Roofing Serv.). As a result of their behavior, parties acting egregiously or in bad faith "significant[ly] prejudice" "the circuit court's ability to efficiently and effectively administer judicial business." Johnson, 162 Wis. 2d at 282. Each time a court's order is ignored, "the administration of justice suffers because the court's time is misused to accommodate the noncomplying party's dilatoriness at the expense of the other party and all other

21

litigants awaiting the court's attention." Id. "[I]n some cases the need to punish and deter the flagrant disobedience of court orders requires the circuit court to impose greater sanctions than monetary ones." Id. at 286. As a prerequisite to imposing default judgment as a discovery sanction, a circuit court must find the sanctioned party engaged in egregious or bad faith conduct, without a clear and justifiable excuse, but need not determine the opposing party was prejudiced thereby.

### 2. Exercise of Discretion Analysis

¶38 The circuit court did not erroneously exercise its discretion when it imposed the sanction of judgment on liability against BMO because it found that BMO's actions were egregious and without a clear and justifiable excuse, applied a sanction authorized under Wis. Stat. § 804.12(2), and reached a reasonable determination. There is no question that the law permits this sanction. Wisconsin Stat. § 804.12(2) provides that "the court in which the action is pending may make such orders in regard to the failure as are just," and authorizes:

> 1. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> 2. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence;
>
> 3. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or

22

proceeding or any part thereof, or <u>rendering a judgment by default against the disobedient party</u>;

     4. In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical, mental or vocational examination.

(Emphasis added.) The circuit court acted under this statute and thus applied the correct law. Our focus then turns to whether the circuit court considered the pertinent facts, made the required findings, and rendered a reasonable determination.

¶39 The circuit court found BMO's actions to be egregious, disingenuous, designed to bury documents and hide a "smoking gun" email, and in violation of its discovery order. Those findings are not clearly erroneous as the record contains evidence supporting them. "[F]ailure to comply with circuit court scheduling and discovery orders without clear and justifiable excuse is egregious conduct." <u>Industrial Roofing Serv.</u>, 299 Wis. 2d 81, ¶43 (quoted source omitted). Conduct, even if unintentional, that is "extreme, substantial and persistent" fits the definition of egregiousness. <u>Hudson Diesel, Inc.</u>, 194 Wis. 2d at 543.

¶40 As demonstrated by the foregoing recitation of the facts, BMO engaged in a persistent pattern of avoidance, delay, and disregard of the circuit court's discovery order. The record demonstrates that BMO initially refused to produce any documents at all, instead claiming that <u>all</u> relevant documents had already been turned over in the MIL case in 2014. BMO's responses to interrogatories and requests to admit were evasive

23

at best and contained outright lies at worst. BMO produced for deposition two corporate representatives who had little-to-no relevant knowledge of the topics identified for discovery, despite the circuit court's direct order to produce an individual with the requisite knowledge.

¶41 After insisting that all relevant documents had been turned over in 2014, BMO "discovered" thousands of documents——over 4,000 pages——at the last hour, days before the second corporate deposition. BMO delayed further in making those documents available to Mohns's lawyer by giving him a password that did not work. Within that batch of thousands of documents was the "smoking gun" email.

¶42 BMO's non-compliance infected the hearing on Mohns's motion to compel and every motion hearing thereafter. The circuit court warned BMO, both orally and in its written order, that it would impose sanctions if BMO did not alter its conduct. It specifically threatened default judgment as a sanction. BMO continued to stall, disregarded the circuit court's explicit warnings, and as the circuit court described: "thumb[ed] its nose at the rules of discovery" from the beginning to the very end.

¶43 The circuit court found BMO's acts to be egregious and disingenuous. It described BMO's actions as "stonewalling," "playing a legal shell game," and giving Mohns and the circuit court the "runaround." The circuit court's comments suggest BMO was intentionally withholding documents and witnesses to avoid liability. The circuit court said BMO had "no excuse" and

24

expressed its belief that BMO tried to get the case dismissed quickly on summary judgment without turning over the very documents which would have precluded the motion from being granted.

¶44 The circuit court found BMO "blatantly disregarded" its order and "egregiously ignored" its discovery obligations. It gave BMO every opportunity to comply, even extending the deadline imposed for discovery. When BMO still refused to comply with the circuit court's order, the circuit court imposed the sanction about which it had previously cautioned BMO——it entered judgment on liability.

¶45 The circuit court expressed that it had never before granted judgment "based on a discovery violation" but it could not "think of a more appropriate one than the one before [it] today." The circuit court explained that its decision to grant default judgment against BMO was being made "with every confidence that that is the appropriate and legal sanction for what has been presented here."

¶46 Based on the circuit court's warnings, its findings of egregiousness, BMO's refusal to obey the order, and the availability of this sanction under Wis. Stat. § 804.12(2), the circuit court's decision to impose the sanction of default judgment was a reasoned determination that a reasonable circuit court could make. Accordingly, the circuit court did not erroneously exercise its discretion, and we affirm the court of appeals decision regarding the discovery sanctions.

A. Contract and Unjust Enrichment

25

¶47 BMO argues the court of appeals erred in upholding the jury's verdict, which awarded damages to Mohns for both breach of contract and unjust enrichment. BMO cites cases barring recovery under the equitable doctrine of unjust enrichment when the parties entered into a contract. Mohns contends that because BMO failed to object on this basis in the circuit court, Schwigel v. Kohlmann, 2002 WI App 121, 254 Wis. 2d 830, 647 N.W.2d 362, permits the multiple awards, particularly because liability in this case is based upon a discovery sanction. The law supports BMO's position.

¶48 Under Wisconsin law, a plaintiff may not recover damages for both breach of contract and unjust enrichment based on the same conduct. See Meyer v. The Laser Vision Inst., LLC, 2006 WI App 70, ¶26, 290 Wis. 2d 764, 714 N.W.2d 223. Unjust enrichment is an equitable claim that cannot coexist with a breach of contract claim. Id., ¶28. If the parties entered into a valid, enforceable contract, then unjust enrichment does not apply. Continental Cas. Co. v. Wisconsin Patients Comp. Fund, 164 Wis.2d 110, 118, 473 N.W.2d 584 (Ct. App. 1991). The availability of damages for unjust enrichment presupposes that a contract does not exist, necessitating an equitable remedy. See Meyer, 290 Wis. 2d 764, ¶¶26, 28; Watts v. Watts, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987). Because the circuit court found a contract existed and the jury awarded damages for BMO's breach of the contract, the award for damages based on unjust enrichment must be set aside. Allowing both to stand would create the legal equivalent of the Schrödinger's cat

26

paradox.[5]  Just as a cat cannot be both dead and alive at the same time, a contract cannot both exist and not exist simultaneously.  A contract either exists, or it doesn't.  If a contract exists, a plaintiff can recover damages for its breach.  Only if a contract does not exist may a party recover damages in equity.

¶49  The circuit court recognized this longstanding legal principle during the jury instruction conference:

> I believe that in the end damages cannot be awarded for both a breach [of contract] and unjust enrichment. There can't be a double reward.
>
>   . . . .
>
> Well it occurs to me that we have instructions in there for contract right now, not for unjust enrichment . . . I think the Plaintiff can elect, and that is usually the way I have seen it and I have imposed on Plaintiffs to pick one or the other once we get to the jury.  If you want to elect unjust enrichment and forego basic contract damages, you can do that.  And if that is the amount you want to argue for, I guess that is your election.
>
>   . . . .
>
>     But I think then we have to go back, if we are going to do unjust enrichment then that is the instruction I am going to give the jury and not the two on contract.

Then the circuit court asked Mohns:  "You want to just go with the conventional contract damages and not the unjust

---

[5] https://whatis.techtarget.com/definition/Schrodingers-cat (explaining Nobel Prize-winning Austrian physicist Erwin Schrödinger's thought experiment presenting the paradox of a cat being both dead and alive at the same time, as a critique of a particular interpretation of quantum mechanics).

enrichment[?]" The circuit court, however, confused the principle of election of remedies with pleading in the alternative.

¶50 "The election of remedies doctrine is an equitable principle barring one from maintaining inconsistent theories or forms of relief." Head & Seemann, Inc. v. Gregg, 104 Wis. 2d 156, 159, 311 N.W.2d 667 (Ct. App. 1981) (emphasis added). "[In] [t]he classic application of the election of remedies doctrine . . . a defrauded party has the election of either rescission or affirming the contract and seeking damages." Id. (citation omitted). "[This] choice is forced . . . because of inconsistency of both rescinding and affirming the contract." Id. (citation omitted). Rescission is an equitable remedy allowing the defrauded party to cancel the contract, while affirming the contract allows the defrauded party to seek damages. "The election of remedies doctrine requires a litigant to choose a remedy, where the remedies sought are inconsistent with one another." Wickenhauser v. Lehtinen, 2007 WI 82, ¶16, 302 Wis. 2d 417, 34 N.W.2d 855 (citation omitted).

¶51 As this court has previously explained, the election of remedies doctrine applies only to remedies, not claims for relief. For example, "[a] claim for relief in tort and a claim for relief in contract are not 'remedies' to which the election of remedies doctrine applies. A remedy is the relief that is applied to a successful claim." Id., ¶16 n.2 (citation omitted). Accordingly, the election of remedies doctrine does

28

not apply to a claim for relief in equity, such as unjust enrichment, or a claim for relief in contract because claims are not remedies.

¶52 A party may plead claims for relief in the alternative, as Mohns did in this case. Wis. Stat. § 802.02(5)(b).[6] Specifically, Mohns claimed the existence of a contract that was breached by BMO, for which Mohns sought damages. Mohns also sought damages under the equitable doctrine of unjust enrichment, a claim for relief available only if a contract was never formed or was legally invalid. Both of Mohns's claims were based on the labor and materials Mohns supplied for the Hickory Hills Condominium construction project. Claims for breach of contract and unjust enrichment arising out of the same conduct or subject matter are inconsistent with each other, one being premised on the existence of a contract and the other available only in the absence of a contract. Under § 802.02(5)(b), however, "claims pleaded in the alternative need not be consistent with one another." Read v. Read, 205 Wis. 2d 558, 575, 556 N.W.2d 768 (Ct. App. 1996) (Fine, J., dissenting).

---

[6] Wisconsin Stat. § 802.02(5)(b) provides: "A party may set forth 2 or more statements of a claim or defense alternatively or hypothetically, either in one claim or defense or in separate claims or defenses. When 2 or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in s. 802.05."

29

Nevertheless, the plaintiff may recover under only one of the claims. If there is a contract between the parties, the plaintiff may recover in contract but not in equity. In this case, the circuit court expressly found the existence of a contract between Mohns and BMO, answering the following question on the special verdict in the affirmative: "Did BMO Harris Bank National Association breach an agreement to pay Mohns Inc. for labor and materials which Mohns Inc. furnished for the Hickory Hills Condominium project?"

¶53 Ultimately, and over the objection of BMO,[7] the circuit court opted to let the jury award damages on both contract and unjust enrichment by attempting to frame the verdict questions to prevent overlapping damages. This was error, as the law does not permit an award for both legal and equitable damages based on the same conduct. Meyer, 290 Wis. 2d 764, ¶¶26, 28; Continental Cas. Co., 164 Wis. 2d at 118.

¶54 While a verdict form could include jury questions related to both breach of contract and unjust enrichment, if the jury finds a contract existed, unjust enrichment will not apply. Only if the jury finds that no contract existed may it award damages for unjust enrichment. The circuit court departed from

---

[7] Mohns argues BMO's objections to this issue were deficient in the circuit court. We disagree. The record shows BMO's lawyer strongly objected, asserting: "[I]t is inconsistent in a case to have both a breach of contract and unjust enrichment . . . as a matter of law you either have a contract, in which case you are entitled to damages, or you have – flowing from that breach, or if you don't have a contract you can have unjust enrichment to measure those damages."

black letter law governing breach of contract and unjust enrichment when the circuit court, as a matter of law, found that BMO "breached an agreement to pay Mohns Inc. for labor and materials Mohns Inc. furnished for the Hickory Hills Condominium project" and that BMO was "unjustly enriched by labor and materials which Mohns Inc. furnished the Hickory Hills Condominium project."  The circuit court erred in granting judgment on liability for both breach of contract and unjust enrichment, and in awarding both legal and equitable damages based on the same conduct.  The two are mutually exclusive.  See Continental Cas. Co., 164 Wis. 2d at 118.

¶55  Mohns's reliance on Schwigel, 254 Wis. 2d 830, is inapposite.  In that case, the court of appeals concluded that "the verdict improperly asked a single damage question on Schwigel's breach of contract, negligent misrepresentation and unjust enrichment claims" but the availability of recovery under claims for both breach of contract and unjust enrichment was not an issue before the court.  Id., ¶2.  Regardless, Schwigel is distinguishable from Mohns's case because Schwigel involved multiple acts arising from a course of conduct, including the sharing of production space, storage of equipment, purchase of a machine, production of motor shafts, defendant's alleged conversion of equipment, and the loss of the plaintiff's customers and, ultimately, his business.  Id., ¶¶3-8.  While the facts of a particular case could support both causes of action if certain conduct was governed by contract and other conduct was independent of the contractual relationship, in this case,

31

the contract and unjust enrichment claims asserted against BMO were both based on the same underlying conduct——Mohns's provision of labor and materials on a construction project, for which it was not paid. Under Wisconsin law, if there was a contract, Mohns could recover contract damages for its breach. Only if there was no contract could Mohns receive the value of the benefit conferred on BMO as a result of the labor and materials Mohns supplied.

¶56 Black letter law precludes Mohns from collecting unjust enrichment damages based on the same conduct for which he received contractual damages, irrespective of the court's liability determination arising in the form of a sanction. Because the circuit court explicitly found that BMO breached an agreement to pay Mohns for its labor and materials, the damages awarded for unjust enrichment must be set aside.

## B. Punitive Damages

¶57 BMO argues the punitive damages award must be set aside because it is not based upon tort liability. We agree. The jury awarded compensatory damages only for breach of contract and unjust enrichment, neither of which supports an award of punitive damages.

¶58 Under Wisconsin law, punitive damages are not available as a remedy in a breach of contract action. Entzminger v. Ford Motor Co., 47 Wis. 2d 751, 757, 177 N.W.2d 899 (1970) ("Punitive damages are not allowed for a mere breach of contract[.]"); Hansen v. Texas Roadhouse, Inc., 2013 WI App 2, ¶29, 345 Wis. 2d 669, 827 N.W.2d 99 ("[P]unitive damages are

32

not available as a remedy for breach of contract[.]"); <u>Autumn Grove Joint Venture v. Rachlin</u>, 138 Wis. 2d 273, 279, 405 N.W.2d 759 (Ct. App. 1987).  A jury's award of punitive damages must be based upon a finding of tort liability.  <u>Hansen</u>, 345 Wis. 2d 669, ¶29.  The punitive damages awarded in this case were not based on tort liability, but rather on breach of contract and quasi-contract and therefore must be set aside.

¶59  The tort liability involved in this case stemmed from BMO's misrepresentation, for which the circuit court granted judgment in favor of Mohns.  The only question on the special verdict regarding misrepresentation was question 3, which asked whether BMO made "an untrue representation of fact, knowing it was untrue, or recklessly without caring whether it was untrue, and with the intent to deceive and induce Mohns Inc. to act upon it" to which the circuit court itself answered "YES" as part of the discovery sanctions.  The special verdict did not contain any question asking the jury to determine a damage award for misrepresentation.

¶60 Although the circuit court entered judgment against BMO for misrepresentation as a discovery sanction, the jury was asked to award damages (if any) only under the contract claims. While discussing the jury instructions with counsel for each party, the circuit court decided to omit any damages question with respect to the misrepresentation claim:  "As far as the misrepresentation I think that goes to attorney fees, and so we are not going to muddy the waters because the damages aren't

going to be any different on any of those." Mohns did not object.

¶61 The punitive damages questions did not reference tort liability whatsoever. Instead, the punitive damages questions were explicitly dependent upon the jury's responses to question 4, which asked the jury what sum would compensate Mohns for damages arising from breach of contract, and question 5, which asked the jury what sum would compensate Mohns for damages arising from the quasi-contract claim of unjust enrichment.[8] The special verdict form instructed the jury: "If you awarded damages to any component of question 4 or question 5, then answer this question" with question 6 immediately after: "Did BMO Harris Bank National Association act maliciously toward Mohns Inc. or in an intentional disregard of the rights of Mohns Inc.?" The special verdict form then instructed the jury to answer the following question 7 only if it answered "yes" to question 6: "What sum, if any, do you award against BMO Harris Bank National Association as punitive damages?" The punitive damages awarded by the jury were based on the amounts it inserted on the special verdict form for BMO's breach of contract and for the quasi-contractual unjust enrichment claim——neither of which support an award for punitive damages.

---

[8] "Because no express or implied in fact agreement exists between the parties, recovery based upon unjust enrichment is sometimes referred to as 'quasi contract,' or contract 'implied in law' rather than 'implied in fact.' Quasi contracts are obligations created by law to prevent injustice." Watts v. Watts, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987).

34

Accordingly, the punitive damages award must be overturned and we reverse the decision of the court of appeals on this issue.

### III.  CONCLUSION

¶62 Wisconsin Stat. § 804.12 permits the discovery sanction imposed by the circuit court and the record demonstrates the circuit court did not erroneously exercise its discretion when it granted judgment against BMO on liability. We affirm the court of appeals decision on the discovery sanction.  However, Wisconsin law does not permit a plaintiff to recover simultaneously for breach of contract and unjust enrichment based on the same conduct or subject matter.  Because the circuit court determined that BMO breached an agreement to pay Mohns for its labor and materials, for which the jury awarded Mohns damages, the jury's award of damages for unjust enrichment based upon the labor and materials supplied by Mohns must be set aside.  Additionally, Wisconsin law only permits a punitive damages award to be based upon a tort, not a contract. Because the special verdict form based the punitive damages on contract, not tort——for which no compensatory damages were sought or awarded——the punitive damages award must also be set aside.  We reverse the decision of the court of appeals on damages and remand the matter to the circuit court to amend the order for judgment and judgment consistent with our opinion.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause remanded to the circuit court for further proceedings consistent with this opinion.

¶63  ANNETTE KINGSLAND ZIEGLER and BRIAN HAGEDORN, JJ., did not participate.