COURT OF APPEALS
DECISION
DATED AND FILED

September 9, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2173**

STATE OF WISCONSIN

Cir. Ct. No. **2019CV157**

IN COURT OF APPEALS
DISTRICT IV

DYNAMIC CONCRETE RESURFACING, LLC,

    PLAINTIFF-RESPONDENT,

V.

FOWLER AND HAMMER, INC.,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for La Crosse County: TODD W. BJERKE, Judge. *Reversed and cause remanded*.

        Before Kloppenburg, Fitzpatrick, and Graham, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1       PER CURIAM. Dynamic Concrete Resurfacing, LLC (Dynamic Concrete) sued Fowler and Hammer, Inc. (Fowler) seeking payment allegedly due pursuant to a June 2018 contract between the two parties.[1] The circuit court granted Dynamic Concrete's motion for summary judgment, ordering Fowler to pay the amount alleged in the complaint. Fowler argues that the circuit court erroneously determined on summary judgment that the parties entered into a "flat-rate contract."[2] Fowler also argues that the parties unambiguously entered into a "time-and-materials contract;"[3] that the amount it owes, if any, is based on Dynamic Concrete's time and material costs for work in addition to the work undertaken pursuant to a prior April 2018 contract between the parties; and that genuine issues of material fact exist as to Dynamic Concrete's time and material costs incurred pursuant to the June 2018 contract.

¶2       We conclude that the June 2018 contract is unambiguously a time-and-materials contract and that there are disputes of material fact as to the amount

---

[1] Appellant refers to itself as "Fowler & Hammer" in its briefs and logo. We use the name "Fowler and Hammer, Inc." as it appears in the caption to refer to the company, which we shorten to "Fowler." We refer to James Fowler, Vice-President and Chief Operating Officer of Fowler, by his first and last name.

[2] Both the circuit court and the parties refer to the contract asserted by Dynamic Concrete and found by the circuit court as a "flat-rate contract." However, Wisconsin courts use the term "fixed-price contract" to refer to what the circuit court and the parties refer to as a "flat-rate contract." *See 1325 N. Van Buren, LLC v. T-3 Grp., Ltd.*, 2006 WI 94, ¶43, 293 Wis. 2d 410, 716 N.W.2d 822 (defining a "fixed-price contract" as one where the parties bargain on the final price of the project and the price does not change based on the hours worked or what is required to complete the project). We will use the term "flat-rate contract" when referencing the parties' submissions before the circuit court and the circuit court's ruling and the term "fixed-price contract" otherwise, consistent with Wisconsin case law.

[3] In contrast to a fixed-price contract, a "time-and-materials contract" is one where the parties do not bargain for a specific sum and, instead, the contractor bills for the usual charges associated with the time and materials needed to complete the project. *La Velle v. De Luca*, 48 Wis. 2d 464, 469, 180 N.W.2d 710, 713 (1970).

of payment due to Dynamic Concrete pursuant to that contract. Accordingly, we reverse and remand to the circuit court for additional proceedings.

## BACKGROUND

¶3 The following facts are undisputed for purposes of summary judgment.

¶4 In 2016, Fowler was awarded a contract for a public improvement construction project for the University of Wisconsin-La Crosse (UW-La Crosse) Sciences Lab Building. As the general contractor on the project, Fowler retained Dynamic Concrete to work as a subcontractor. The parties entered into two fixed-price contracts, one for epoxy work pertaining to concrete flooring and one for concrete staining. In April 2018, the parties entered into an additional fixed-price contract pertaining to concrete flooring, in the amount of $209,380.00.

¶5 As the work on both contracts progressed, the parties entered into an additional contract in June 2018, which is the primary subject of their dispute and this appeal. The June 2018 contract was for Dynamic Concrete to perform "deep grinding work" related to the epoxy contract. The contract is contained in a series of emails between Kurt Kopp, Managing Member of Dynamic Concrete, James Fowler, Vice-President and Chief Operating Officer of Fowler, and Eric Lehman, Part-Owner of Fowler. Because this appeal revolves around these emails, we reproduce them in full as follows.

¶6 First, on June 20, 2018, Kopp (at Dynamic Concrete) sent Lehman (at Fowler) an email stating, "Please reply that you received this estimate," along with a document entitled "Estimate" stating a "[c]ost" of $44,689.28 with the following description:

3

This change order is for additional work needed for deep grinding in order to remove the majority of the pop outs on the remaining floors of the basement, floor 1, floor 3, and floor 4 at UWL Science Lab Building.

¶7    Second, that same day Lehman replied:

Kurt – we don't have any [] more dollars to give you. I don't understand why 2nd floor took 7 days and 3rd floor took 4 days and looked bad.  If you would have taken more days it probably would have looked better.  If you have to do a deeper grind to get consistency maybe that is a[n] argument we can have with River [Architects] and DFD [Wisconsin Division of Facilities Development].

¶8    Third, also on that same day, Kopp replied:

Ok[.]

We will polish to a salt and pepper finish on 4th floor as per the estimate, [you will] will have to accept it. I'm fine with that since we won[']t incur extra time and costs.  The only extra time that will have to be covered is for the extra seven days of grinding that Jim has us complete on third floor.

¶9    Fourth, the next day James Fowler sent Kopp the following email:

Proceed with the additional deep grinding work that we discussed today at the UW-L Sciences Bldg.  I agree that 4th floor will take extra work but that first floor and the basement are expected to be similar to the 2nd floor grinding effort.  We are hoping the added cost will be well under the original estimate of $45,000.  Keep track of hours spent on each floor to help determine additional costs.  Let me know if you need a more formal change order to proceed with the work.

¶10    Dynamic Concrete proceeded with the remaining work and, after it was complete, on July 12, 2018, emailed Fowler an "Invoice" for $44,689.28 for:

[A]dditional work needed for deep grinding in order to remove the majority of the pop outs on the remaining floors of the basement, floor 1, floor 3, and floor 4 at UWL Science Lab Building.

4

¶11     Fowler did not pay this invoice.  In the absence of payment by Fowler, Dynamic Concrete served a Claim of Public Improvement Lien on Fowler and the Wisconsin Department of Administration, Division of State Facilities seeking payment of the $44,689.28 invoice, as well as of other unpaid invoices between the parties that are not at issue in the present appeal.[4]  Fowler disputed the claim. Dynamic Concrete then brought this action, seeking three categories of payment— retainages, repair around the floor and drain area, and the deep grinding work— based on any one of five alternative claims.[5]

---

[4] *See* WIS. STAT. § 779.15(1-3) (2019-20) (setting forth a lien process for any person who provided services or materials directly to a prime contractor performing work for a state, county, town, or municipality department).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[5] As best we can tell from the parties' submissions, "retainage" refers to a proportion of the total contract price that is withheld by the State until the project is completed.

As to the three categories of payment sought, the portion of the circuit court judgment that includes payment pursuant to the June 2018 contract is in the amount of $44,689.28.  The judgment also includes payment of $15,908.73 in "retainage" held by the State and payment on a $947.29 invoice for work on floor drains.  We do not separately address the parties' factual disputes and arguments as to the latter two payments, because those additional disputes and arguments can be addressed on remand.

The five claims for payment are:  (1) public improvement lien under WIS. STAT. § 779.15; (2) account stated; (3) breach of contract; (4) promissory estoppel; and (5) quantum meruit or unjust enrichment.  The first three claims allege that Dynamic Concrete is entitled to payment under a fixed-price contract.  These claims cannot be resolved on summary judgment because, as we conclude, genuine issues of material fact exist as to the payment due Dynamic Concrete pursuant to the June 2018 time-and-materials contract.  Dynamic Concrete's last two claims allege that Dynamic Concrete is entitled to payment under alternative contract theories that become relevant where no contract is found to exist between the parties.  *See* **Hoffman v. Red Owl Stores, Inc.**, 26 Wis. 2d 683, 697–98, 133 N.W.2d 267 (1965) ("[T]he doctrine of promissory estoppel was invoked as a substitute for consideration rendering a gratuitous promise enforceable as a contract."); *see also* **Ramsey v. Ellis**, 168 Wis. 2d 779, 785, 484 N.W.2d 331 (1992) ("recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered"); **Mohns v. BMO Harris Bank**, 2021 WI 8, ¶55, 395 Wis. 2d 421, 954 N.W.2d 339 (unjust enrichment is not an available remedy where the parties have a contract and the alleged conduct is not "independent of the contractual relationship").  Because the parties do not dispute that a contract exists, or that the conduct at issue is not independent of the contractual relationship, Fowler is entitled to summary judgment in its favor as to the last two claims.

¶12    Dynamic Concrete moved for summary judgment awarding it the amount sought in its complaint, arguing, in pertinent part, that the June 2018 contract was a flat-rate contract, not a time-and-materials contract. The circuit court granted Dynamic Concrete's motion, determining that there is no genuine issue of material fact that the parties entered into a "flat-rate contract." Fowler appeals.

## DISCUSSION

¶13    Fowler argues that Dynamic Concrete is not entitled to summary judgment on its claims for payment because the parties entered into a time-and-materials contract, not a fixed-price contract, and there are genuine issues of material fact regarding what, if any amount Fowler owes Dynamic Concrete for the work undertaken pursuant to that contract. We agree.

### A. Applicable Standard of Review and Legal Principles

¶14    "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶15    "When construing contracts … our goal is to ascertain the true intentions of the parties as expressed by the contractual language." *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 (internal citation omitted). "The best indication of the parties' intent is the language of the contract itself." *Id.* "If the contract is unambiguous, our attempt to determine

the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." *Id.*

## *B. Analysis*

¶16 The parties agree that the June 2018 email communications between them control as the only written memorialization of their contract regarding the additional deep grinding work. As stated, they disagree as to whether that contract is a fixed-price or a time-and-materials contract.

¶17 Fowler argues that the directive in the contract to "[k]eep track of hours spent on each floor to help determine additional costs" rejected Kopp's estimate and created a time-and-materials contract. The contractual language in the four emails read together supports this interpretation. In the specific language cited by Fowler, Fowler is agreeing to pay for additional work performed by Dynamic Concrete and evidenced by tracked hours and materials, irrespective of Dynamic Concrete's estimate. In other words, had the tracked time and materials resulted in costs above the $44,689.28 estimate, Fowler would have been obligated to pay those costs.

¶18 Dynamic Concrete makes only one argument in the argument section of its respondent's brief in support of its position that the June 2018 contract is, despite its language, a fixed-price contract. That argument is that its previous contracts with Fowler for this construction project were fixed-price contracts. However, Dynamic Concrete notably does not argue that the June 2018 contract is ambiguous, and, therefore, we may not look to extrinsic evidence, such as prior contracts, to interpret its terms. *See Town Bank*, 330 Wis. 2d 340, ¶33 (stating that it is only when a contract is ambiguous that the court may look to extrinsic evidence to interpret the contract). Moreover, Dynamic Concrete cites neither any language

from the June 2018 contract nor any relevant legal authority in support of its previous-fixed-price-contracts argument.[6] Accordingly, we do not consider this argument further. *See* ***State v. McMorris***, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record.").

¶19    Dynamic Concrete also appears to argue in the facts section of its respondent's brief that there *is* language in the June 2018 contract that establishes that the June 2018 contract is a fixed-price contract. This apparent argument is not supported by the contractual language that it cites. The entirety of the apparent argument is as follows:

> This e-mail[7] confirms that James Fowler met Kopp at the UW-L Science Building and that Fowler agreed that the 4th floor would take extra work by Dynamic. This e-mail also confirmed that FHI authorized Dynamic's extra work and

---

[6] Indeed, in its analysis of the interpretation of the June 2018 contract, Dynamic Concrete cites to only two non-Wisconsin sources for general basic principles of contract interpretation, including a secondary source and a case from New York. Neither source is controlling or pertinent to Dynamic Concrete's argument based on previous fixed-price contracts.

[7] The email to which Dynamic Concrete refers is reproduced here for the reader's convenience:

> Proceed with the additional deep grinding work that we discussed today at the UW-L Sciences Bldg. I agree that 4th floor will take extra work but that first floor and the basement are expected to be similar to the 2nd floor grinding effort. We are hoping the added cost will be well under the original estimate of $45,000. Keep track of hours spent on each floor to help determine additional costs. Let me know if you need a more formal change order to proceed with the work.

expected to pay up to the estimate of $45,000, even though Fowler was "hoping the added cost" would be less.

¶20 These sentences merely confirm that the parties had entered into a contract pursuant to which Fowler agreed to pay Dynamic Concrete for additional work. As to the parties' intent as to the terms of the contract, the second sentence misrepresents the specific contractual language in the email. Dynamic Concrete asserts that Fowler's email shows that Fowler was willing to pay any amount, but only up to the amount of the estimate. However, Fowler's expressed hope that "the added cost [for the extra work] will be well under the original estimate of $45,000" is not an agreement that it *will* pay any amount up to $45,000. Rather, the immediately following directive to "[k]eep track of hours spent on each floor to help determine additional costs" indicates Fowler's agreement that it will pay "the added cost," regardless of whether the added cost is under or over the estimate, so long as the added cost is documented in records of the hours spent on the "extra work."

¶21 In sum, Dynamic Concrete has failed to establish that Fowler's interpretation of the language as creating a time-and-materials contract is unreasonable, or that there is an alternative reasonable interpretation. Under our de novo review of the contractual language, we conclude that it unambiguously establishes that the contract is a time-and-materials contract.

¶22 We now turn to the parties' dispute as to whether Dynamic Concrete submitted sufficient records of time and materials to support its claim for payment in the amount of its estimate. Dynamic Concrete cites the documents it produced in discovery and argues that those documents show that it did provide sufficient documentation of hours worked. However, Dynamic Concrete does not address Fowler's argument based on evidence that Fowler contends shows that: (1) the reported hours conflict with the evidence it produced comprising certified payroll

records and Fowler's own tracking of Dynamic Concrete's hours; and (2) Fowler's records show that much if not all of the reported hours are for work undertaken pursuant to the April 2018 fixed-price contract rather than the June 2018 time-and-materials contract. We conclude that the parties' arguments reflect genuine disputes of material fact as to what amount Dynamic Concrete is owed pursuant to the June 2018 contract, specifically whether Dynamic Concrete's records of hours worked establish that it is owed $44,689.28 as estimated or some amount below or above that amount. Accordingly, Dynamic Concrete is not entitled to summary judgment on its claims for payment.

## CONCLUSION

¶23 For the reasons stated, we reverse and remand to the circuit court for additional proceedings.

*By the Court.*—Judgment reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.