# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 2, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP2181**
**2023AP2182**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2022JC701**
**2022JC702**

**IN COURT OF APPEALS**
**DISTRICT I**

---

APPEAL NO. **2023AP2181**

IN THE INTEREST OF N.M., A PERSON UNDER THE AGE OF **18**:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

M.A.C.,

      RESPONDENT-APPELLANT.

---

APPEAL NO. **2023AP2182**

IN THE INTEREST OF I.W., A PERSON UNDER THE AGE OF **18**:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

**M.A.C.,**

**RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Milwaukee County: REYNA I. MORALES, Judge. *Reversed and cause remanded for further proceedings.*

¶1 GEENEN, J.[1] Molly appeals the circuit court's orders finding her in default and striking her contest posture related to CHIPS[2] petitions involving her two children, Natalie and Iliana.[3] Molly argues that the circuit court's orders taking jurisdiction over her children by default for her failure to appear at the March 15, 2023 status hearing was an erroneous exercise of discretion because her conduct was not egregious or in bad faith. Specifically, Molly contends that she was unable to attend the status hearing because she was attending a hearing in a separate matter, in a criminal court, which ran late, and that these circumstances constitute a clear and justifiable excuse for her nonappearance. The facts do not establish that Molly's conduct on March 15th was egregious or in bad faith. For the following reasons, we reverse the orders of the circuit court and remand for further proceedings.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] CHIPS is an acronym used "to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette County v. Tammy C.*, 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).

[3] For ease of reading, the family in this confidential matter is referred to using pseudonyms. *See* WIS. STAT. RULE 809.19(1)(g).

## BACKGROUND

¶2 On October 4, 2022, the State filed petitions under WIS. STAT. § 48.13(10) alleging that Natalie and Iliana were children in need of protection or services.

¶3 Molly's attendance at early hearings in the case was sporadic. She attended a temporary physical custody hearing where the court commissioner generally warned that failure to be present at scheduled court dates could result in a default finding. Molly did not appear at the initial scheduled plea hearing, though it was unclear whether she had been served, and the circuit court[4] adjourned the hearing. Two months later, Molly did not appear at the adjourned plea hearing; the hearing was again adjourned, this time due to the motion for substitution that Molly filed prior to the hearing. Molly attended the adjourned plea hearing on January 13, 2023, and entered a plea contesting the CHIPS petitions and preserved her right to a jury trial. The court scheduled a settlement conference for the following month.

¶4 Molly did not appear at the settlement conference on February 14, 2023. At that conference, Molly's counsel, acting on her behalf, requested a jury trial. The guardian *ad litem* (GAL) for Iliana requested that the court commissioner conducting the conference take a default finding for Molly under advisement due to her failure to appear. The State supported the GAL's request, noting that the settlement conference was at least the second hearing

---

[4] This case was initially before the Honorable Laura Gramling Perez before it was reassigned to the Honorable Reyna I. Morales; we refer to both as the circuit court.

Molly has missed. The court commissioner granted the request and stated:

> The parents are advised they must attend all future court proceedings. They are advised through their counsel. Should they fail to appear, they may be found to be in default and if they are found to be in default, decisions regarding the well-being of the children may be made in their absence.

¶5 Molly attended the next status hearing in the case on February 21, 2023. After confirming that Molly still wanted a jury trial, the circuit court agreed to schedule the jury trial at the permanency plan hearing, which had already been scheduled for 10:00 a.m. on March 15, 2023. The circuit court then stated, "I understand that sometimes issues come up, but then we will be selecting dates on that day. Everybody … is advised that they need to be present. Failure to be present will result in default." Following the court's statement, Molly's counsel requested rescheduling to accommodate a scheduling conflict in his calendar, but his request was denied.

¶6 Molly was not present at the status hearing on March 15, 2023. Instead, Molly was in a different Milwaukee County Circuit Court courtroom awaiting a hearing in a criminal traffic case, scheduled to begin at 9:00 a.m. Molly's criminal counsel notified the circuit court prior to the start of the CHIPS status hearing that Molly was attending a hearing in the criminal court on her criminal case. When the CHIPS hearing began at 10:00 a.m., the circuit court informed the parties that Molly's criminal counsel had notified the circuit court earlier that morning that Molly "had something at 9:00 a.m.," referring to the criminal hearing, and that she "may be here, but she may be late." Molly did not attend the CHIPS hearing. The criminal court hearing did not begin until 10:46 a.m., and the CHIPS hearing ended at 10:32 a.m.

¶7     During the March 15th CHIPS hearing, the State requested that the circuit court find Molly in default for her nonappearance, and the GAL supported the State's request.  Molly's counsel opposed the request and, after reiterating that Molly was not present in the CHIPS court because she was in another courtroom for a different matter she was also required to attend, stated, "We are set here … to pick a trial date and I'm prepared to do that, and I'm authorized to do that.  So I'm asking the [c]ourt to reject the State's request for default, and permit me to pick trial dates," and argued that default would be inappropriate.

¶8     The circuit court found that Molly's failure to appear was egregious, struck Molly's contest posture, and took jurisdiction over both children by default.[5]  The circuit court reasoned that Molly was aware that the hearings in her criminal case and CHIPS case were scheduled at conflicting times, and that the parties had been previously warned both by the circuit court and the court commissioner that a failure to be present at hearings could result in default.  The circuit court stated that Molly could have "gone on to a breakout room and … just let [the circuit court] know what is going on."  It further explained that "this matter just has been lagging on for a while.  This is children's court.  We have to look [at] what is in the best interest of the children."  Aside from characterizing Molly's conduct as egregious, the circuit court cited no rule, precedent, statutory basis, or standard for its decision.

---

[5] The circuit court did not expressly address whether Molly had a clear and justifiable excuse for her absence, but a circuit court is not required to use "magic words."  *See State v. Brown*, 2020 WI 63, ¶27, 392 Wis. 2d 454, 945 N.W.2d 584 ("The law generally rejects imposing 'magic words' requirements.").  We therefore presume that the circuit court determined that Molly did not have such an excuse.  *See State v. Echols*, 175 Wis. 2d 653, 673, 499 N.W.2d 631 (1993) ("When a [circuit] court does not expressly make a finding necessary to support its legal conclusion, an appellate court can assume that the [circuit] court made the finding in the way that supports its decision.").

¶9       Molly filed a motion for the circuit court to reconsider its orders, arguing that her failure to appear was not so egregious to warrant a default finding as a sanction.  Molly explained that her criminal hearing ran hours late, thus preventing her from attending the CHIPS hearing because failing to appear in criminal court would result in the issuance of a bench warrant to secure her appearance.  Therefore, Molly contended that these circumstances constituted a justifiable excuse for her nonappearance at the CHIPS hearing, which was only scheduled to choose trial dates.

¶10      The circuit court denied Molly's motion for reconsideration.  It stated that it "must look at the whole case history and not view [Molly's] failure to appear at the March 15, 2023 hearing in a vacuum."  It reasoned that Molly's criminal counsel would have been able to ask the criminal court judge to allow Molly to leave the criminal hearing to attend the CHIPS hearing and that, based on its own experience with criminal court, after Molly's case was called "[s]he could have potentially … chosen to log in [to the CHIPS court's Zoom hearing room] at that time and come on into this hearing.  She chose not to."  Thus, the circuit court denied Molly's motion for reconsideration and let the default judgment stand, concluding "[t]hat based upon the case history, [Molly's] failure to appear at the March 15, 2023 hearing was intentional, egregious, or without justifiable excuse."

¶11      Molly petitioned this court for leave to appeal the circuit court's order denying her motion for reconsideration; we denied the petition on May 16, 2023.  On June 2, 2023, the circuit court held an adjourned disposition hearing.  When that hearing began at 8:31 a.m., Molly was again absent, and the circuit court defaulted Molly as to jurisdiction and entered dispositional orders for both Natalie and Iliana.  Molly eventually arrived at 8:55 a.m., and the court ordered the default finding and the dispositional orders to remain.

6

¶12    Molly now appeals the circuit court's orders.

## DISCUSSION

¶13    As a threshold matter, the State argues that this appeal, solely as it relates to Iliana, is moot because Iliana's underlying CHIPS case was closed, so "there is no relief this [c]ourt could grant [Molly] since there is no underlying or existing controversy[.]"[6]

¶14    "In Wisconsin, dismissal of a case as moot is an act of judicial restraint rather than a jurisdictional requirement." *Sauk County v. S.A.M.*, 2022 WI 46, ¶19, 402 Wis. 2d 379, 975 N.W.2d 162.  "A case is moot when the resolution of an issue will have no practical effect on the underlying controversy." *Id.*  A case "is not moot when the direct or collateral consequences of the order persist and vacatur of that order would practically affect those consequences." *Id.* *See Marathon County v. D.K.*, 2020 WI 8, ¶23, 390 Wis. 2d 50, 937 N.W.2d 901 (discussing how "[t]he idea that collateral consequences can render an otherwise moot issue not moot is nothing new in Wisconsin.").  "[W]hether a collateral consequence renders an appeal not moot turns on the existence of a 'causal relationship' between a legal consequence and the challenged order." *S.A.M.*, 402 Wis. 2d 379, ¶20.

¶15    Molly contends that this appeal is not moot because she was ordered to pay child support to Iliana's father at the case closure hearing.  Molly reasons

---

[6] The GAL filed a Statement of Non-Participation indicating that he would not participate in this appeal because he also believes that this appeal, as it relates to Iliana, is moot, and that, to the extent this court disagrees, he believes the State's response sufficiently represents Iliana's best interests.

that the child support payments are a collateral consequence of the circuit court's orders taking jurisdiction over her children by default; thus, this appeal is not moot. We find Molly's reasoning persuasive. The child support payments are a collateral consequence of the circuit court taking jurisdiction over Iliana that persists beyond the closure of Iliana's underlying CHIPS case and would be affected by the vacatur of the circuit court's orders finding jurisdiction by default. Accordingly, this appeal is not moot.

¶16    We therefore turn to the merits of Molly's claims. Molly argues first that the circuit court erroneously exercised its discretion when it sanctioned her with a default finding because it "relied on inaccurate facts and neglected other relevant facts[.]" Molly also argues that the fact that she was attending a hearing in a criminal court constitutes a clear and justifiable excuse for her nonappearance at the March 15, 2023, CHIPS hearing.

¶17    "[A] circuit court has both inherent authority and statutory authority under WIS. STAT. §§ 802.10(7), 804.12(2)(a), and 805.03 to sanction parties for failing to obey court orders" by entering default judgments against noncomplying parties. *Evelyn C. R. v. Tykila S.*, 2001 WI 110, ¶17, 246 Wis. 2d 1, 629 N.W.2d 768 (footnotes omitted). The circuit court is limited, however, to imposing sanctions that are "just." Sec. 805.03. A default judgment is a drastic penalty that should be imposed only when such a harsh measure is necessary. *Mohns Inc. v. BMO Harris Bank N.A.*, 2021 WI 8, ¶36, 395 Wis. 2d 421, 954 N.W.2d 339. Therefore, the court is required to make the heightened findings of "egregious conduct" or "bad faith" without a "clear and justifiable excuse" before granting a default judgment to ensure the sanction is just. *Id.*; *see also Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898.

8

¶18    "The decision to impose sanctions and the decision of which sanctions to impose … are within a circuit court's discretion." *Marquardt*, 299 Wis. 2d 81, ¶41.  "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.  "This process must depend on facts that are of record or that are reasonably derived by inference from the record[.]" *Gahl v. Aurora Health Care, Inc.*, 2023 WI 35, ¶22, ___ Wis. 2d ___, 989 N.W.2d 561 (citing *McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971)).

¶19    In the case of sanctions assessed for egregious conduct, a court erroneously exercises its discretion "if the aggrieved party can establish a 'clear and justifiable excuse'" for the conduct at issue.  *Marquardt*, 299 Wis. 2d 81, ¶89 (Butler, J., concurring) (citing *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991), *overruled on other grounds by Marquardt*, 299 Wis. 2d 81).  *See Brandon Apparel Grp., Inc. v. Pearson Props., Ltd.*, 2001 WI App 205, ¶11, 247 Wis. 2d 521, 634 N.W.2d 544; *Taylor v. State Highway Comm'n*, 45 Wis. 2d 490, 494, 173 N.W.2d 707 (1970) (noting that a party may establish an erroneous excercise of discretion if they show a "clear and justifiable excuse" for noncompliance).  Therefore, we must examine whether the circuit court imposed the default sanction in accordance with the law upon a reasonable determination of the facts in the record, and whether such facts establish egregious conduct and the absence of a clear and justifiable excuse.

¶20    Molly did not comply with the circuit court's order when she did not attend the March 15, 2023 hearing, but she offered the circuit court a clear and justifiable excuse for her failure to comply.  There is no doubt that the excuse was

legitimate, but the circuit court rejected the excuse and found Molly's conduct egregious for two reasons: first, its belief that "[Molly] could have gone on to a breakout room and then just had, you know, go in there and—and just let us know what is going on," and second, that Molly should have avoided a scheduling conflict altogether by either asking the circuit court to reschedule the CHIPS hearing, or by not allowing the criminal case to be scheduled for a hearing on the same day. After reviewing the record, we conclude that the circuit court erred as a matter of law when it concluded that Molly's conduct was egregious and without a clear and justifiable excuse when Molly, in fact, presented such an excuse.

¶21 Molly was required to attend both a 9:00 a.m. hearing and a 10:00 a.m. hearing on March 15, 2023, in different courtrooms. When Molly's criminal counsel realized the criminal court was running late, he contacted the circuit court—*prior* to the start of the CHIPS hearing—to notify it of the potential scheduling conflict, and indicated that Molly would appear at the CHIPS hearing after her case was called if she was able.[7] However, when the 10:00 a.m. CHIPS hearing began in the circuit court, Molly was still waiting to begin the hearing on her criminal case, which was not called until 10:46 a.m., after the CHIPS hearing had already concluded. Molly therefore did not attend the CHIPS hearing. It is undisputed that Molly's criminal hearing was called well after the scheduled start time and ran late, and that Molly waited for that case to be called. There is also no genuine dispute that Molly had any control over the timing of when her criminal case was called.

---

[7] The circuit court's description of the statement Molly's criminal counsel made to the circuit court was that Molly "may be here, but may be late;" it did not imply any certainty about Molly's attendance.

10

¶22    Our supreme court has noted that a "clear and justifiable" excuse is a defense for not complying with the rules. *State v. Smythe*, 225 Wis. 2d 456, 470, 592 N.W.2d 628 (1999).  Beyond that statement, Wisconsin courts have not extensively considered the meaning of "clear and justifiable excuse," or what constitutes such an excuse.  The phrase, however, is used in the context of ignoring court orders, and thus implies that there can be reasons for a party's noncompliance that reduces one's culpability for the failure to comply.

¶23    While the court speculates that Molly could have found a way to appear remotely in the circuit court for the CHIPS hearing while waiting for her criminal case to be called, there was no evidentiary hearing or offer of proof that precipitated the default finding that supports the court's speculation and rejection of Molly's clear and justifiable excuse.  There was no testimony or other factual evidence that the criminal court would have allowed Molly to step out to attend another hearing without consequence to her position in that court.  No facts in the record establish that Molly knew that the circuit court expected her to take extraordinary measures to appear remotely in the CHIPS hearing despite the risk of potential consequences, and despite giving the circuit court a clear and justifiable excuse for her tardiness or potential absence.[8]  And while, perhaps, Molly should have notified the court or counsel in her various proceedings about other court dates to ensure a conflict was avoided, there are no facts in the record that suggest that Molly knew that these hearing times would conflict or that she

---

[8] When discussing the motion for reconsideration, the circuit court also stated that Molly would have been free to leave the criminal courtroom and appear remotely in the circuit court after her criminal case was called, but the case was not called until after the CHIPS hearing ended.  Molly would not have been able to appear at the CHIPS hearing after her criminal case was called, and the circuit court's conclusion to the contrary is unsupported by fact.

would not be able to attend both hearings, such that the conflict can be solely attributed to Molly.[9]

¶24    Molly's failure to attend the circuit court hearing was due to circumstances over which she had no control—the criminal court running late. She could not reasonably be in two places at once. Molly provided the circuit court with a clear and justifiable excuse related to her attendance prior to the start of the CHIPS hearing. There is no dispute that Molly was waiting for her criminal case to be called and that the case was not called until after the CHIPS hearing concluded. The circuit court's refusal to accept Molly's excuse under the circumstances is unreasonable because the circuit court's reasoning is supported by its own speculation instead of relevant facts. *See **Bentz v. Bentz***, 148 Wis. 2d 400, 403, 435 N.W.2d 293 (Ct. App. 1988) ("[I]f the [circuit] court's decision is based on facts which do not exist, an abuse [of discretion] has occurred."). Therefore, the circuit court erroneously exercised its discretion when it found that Molly was absent from the CHIPS hearing without a clear and justifiable excuse. Molly's conduct was not egregious because Molly presented a clear and justifiable excuse.

¶25    While the State argues that Molly's failure to appear at hearings both before and after the March 15, 2023 CHIPS hearing supports a finding that

---

[9] While the circuit court found it egregious that Molly did not notify it of the conflict earlier or ask for the hearing to be rescheduled because it was "as accommodating as possible," we note that the circuit court was less accommodating than it recalled. When Molly's CHIPS counsel told the circuit court that the March 15th hearing presented a scheduling conflict for him and asked to reschedule, the circuit court responded, "If you look at my calendar, I have—I have absolutely no openings and I'm not going to move it." Therefore, even if Molly recognized that it would be prudent to ask the court to reschedule, it would not have been unreasonable for her to think that the hearing date and time were immovable and attempt to attend both hearings.

Molly's pattern of conduct was egregious, we disagree.[10] Although the circuit court did not discuss Molly's prior nonappearances in any detail and was clear that Molly's absence from the March 15, 2023 hearing was the trigger and primary basis for the circuit court's finding of egregiousness, this court "search[es] the record for reasons to sustain the [circuit] court's exercise of discretion." *Lofthus v. Lofthus*, 2004 WI App 65, ¶21, 270 Wis. 2d 515, 678 N.W.2d 393. Upon review, we conclude that the facts in the records do not indicate that Molly's three prior failures to appear were "'so extreme, substantial and persistent' that the conduct may be considered egregious[.]" *See Mable K.*, 346 Wis. 2d 396, ¶70.

¶26 Molly's first nonappearance at the initial plea hearing involved a question of whether she was properly served, and the circuit court adjourned the hearing for that reason. Molly's second nonappearance at the adjourned plea hearing did not result in any delays because Molly had, prior to the hearing, timely filed a motion for substitution which deprives the circuit court of jurisdiction and would require it to adjourn the hearing, which it did immediately after Molly's counsel notified it of the substitution request. *See* WIS. STAT. § 801.58(2).

¶27 Finally, Molly's third nonappearance at the settlement conference before the court commissioner also did not cause any delays because her counsel was authorized to act on her behalf. While the court commissioner took the State's and the GAL's request for a default finding under advisement, it did not make such a finding, and neither the State nor the GAL renewed its motion for a

---

[10] Molly's failure to appear at hearings *after* the circuit court's default order on March 15, 2023, cannot be used as a basis to support the circuit court's finding of egregiousness because they occurred after the circuit court defaulted Molly, thus they were not facts available to inform the circuit court's exercise of discretion at the time.

default finding solely based on Molly's three nonappearances at the next hearing, at which Molly was present. Based on the facts in the records, we cannot say that Molly flagrantly disregarded the judicial process, or that these three absences were "extreme, substantial, or persistent"; especially, in light of the extenuating circumstances, because that they did not contribute to any significant delays in the proceedings. *See **Mable K.***, 346 Wis. 2d 396, ¶70. *See also **Taylor***, 45 Wis. 2d 490, 494 (stating that a "clear and justifiable excuse *for the delay*" in proceedings can establish an erroneous exercise of circuit court's discretion. (Emphasis added)).

¶28    The State also argues that reversing the circuit court's orders "would waste the [circuit court's] valuable resources and further delay stability for these children." As the State notes, WIS. STAT. ch. 48 recognizes "that instability and impermanence in family relationships are contrary to the welfare of children" and that it is important to "eliminat[e] the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their safe return to the family." WIS. STAT. § 48.01(1)(a). While this is undoubtedly true, it is also true that the circuit court only has the power to impose "just" sanctions on parties for failing to obey court orders. *See* WIS. STAT. § 805.03. We cannot ignore that the circuit court's default ruling here was not a "just" sanction for Molly's nonappearance at the CHIPS hearing, particularly when Molly's CHIPS counsel was authorized to schedule the trial despite Molly's absence, thus

14

avoiding any delay resulting from her absence. *See also **Mable K.***, 346 Wis. 2d 396, ¶61 ("[P]arents must be provided with fundamentally fair procedures.").[11]

## CONCLUSION

¶29 The decision to issue a default ruling against Molly resulting from her inability to attend a hearing because she was, simultaneously, in a criminal court hearing that the circuit court knew about—on a case she would likely need to resolve as a part of CHIPS proceedings—is unreasonable.[12] Molly had a clear and justifiable excuse for her nonappearance at the March 15th hearing. Additionally, Molly's three prior nonappearances were not so extreme, substantial, and persistent on their own to support the heightened finding of egregious conduct necessary for the circuit court to issue such a drastic sanction. *See **Mohns, Inc.***, 395 Wis. 2d 421, ¶36. Therefore, the circuit court erroneously exercised its discretion when it sanctioned Molly with a finding of default because it failed to rely on the relevant facts to reach a conclusion that a reasonable judge could reach.

¶30 Accordingly, we reverse the circuit court's orders taking jurisdiction over the children by default, and remand for further proceedings consistent with

---

[11] WISCONSIN STAT. § 48.01(1)(ad) provides that a purpose of proceedings under WIS. STAT. ch. 48, like CHIPS proceedings, is "[t]o provide judicial and other procedures through which children and all other interested parties are assured fair hearings and their constitutional and other legal rights are recognized and enforced, while protecting the public safety."

[12] A common condition for a parent whose children are subject to a CHIPS dispositional order is that the parent must resolve all outstanding criminal cases in order to have their children returned to their care. *See e.g.*, ***Sheboygan Cnty. DHHS. v. Tanya M.B.***, 2010 WI 55, ¶5, 325 Wis. 2d 524, 785 N.W.2d 369; ***State v. D.K.***, Nos. 2023AP292 and 2023AP293, unpublished slip op. ¶3 (WI App Jan. 3, 2024); ***State v. A.A.L.***, No. 2022AP1074, unpublished slip op. ¶25 (WI App Oct. 11, 2022). The circuit court did, in fact, apply this condition to Molly in its June 2, 2023 dispositional order.

this decision. The orders of the circuit court made after March 15, 2023, pursuant to the jurisdiction it found by default over both children, are now void.

*By the Court.*—Orders reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.